**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ASHBY HENDERSON**, Individually and on Behalf of All Others Similarly Situated, | Case No. 15-10599 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **THE BANK OF NEW YORK MELLON CORPORATION**; | |
| **BNY MELLON, NATIONAL ASSOCIATION**; | |
| **THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION** | |
| Defendants. | |

## I.   INTRODUCTION

1.     This case arises from breaches of fiduciary duties owed to trust beneficiaries by Defendants The Bank of New York Mellon Corporation ("BNY Mellon Corp.), BNY Mellon, National Association ("BNY Mellon, N.A.") and The Bank of New York Mellon Trust Company, National Association ("BNY Mellon Trust") (hereinafter collectively referred to as "Defendants").

2.     Plaintiff and members of the proposed Class are all persons or entities who are grantors, trustors, beneficiaries, remaindermen, co-trustees, and/or successor trustees of trusts that: (1) Defendants served as trustee, (2) that Defendants had investment discretion or recommendation responsibility over principal and/or income, and (3) had assets in investments that were financially affiliated with Defendants.

3.       Section 5 of the Uniform Prudent Investor Act, entitled "Loyalty," states that "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries."

4.       The law mandates this duty of loyalty where all investment decisions are vested in the trustee. The legal counterpoint to the trustee's authority is the trustee's obligation to act solely in the best interests of the beneficiary, to whom all of the trust's benefits belong. See e.g. *Rutanen v. Ballard*, 424 Mass. 723, 731, 678 N.E.2d 133, 139-140 (1997); *Boston Safe Deposit & Trust Co. v. Lewis*, 317 Mass. 137, 140, 57 N.E.2d 638, 640 (1944) ("A trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust.  He must lay aside self-interest when it becomes adverse to the cestui que trust, for the office of trustee cannot be subverted to fostering the personal advantage or individual gain of the incumbent.")

5.       Professional trustees, such as Defendants, are held to the highest standard of care in discharging their legal duties, the most exacting known to the law.

6.       But acting under a uniform policy, Defendants abandoned their fiduciary duties and instead advanced their own financial interests, improperly placing the vast majority of the beneficiaries' trust assets into mutual funds, common and collective trust, hedge funds and other investment vehicles that Defendants managed, issued, or sponsored, or to which they were otherwise financially related.

7.       Defendants' decisions were based on the financial benefit they derived from the investments into which they placed trust assets, not on which investments were most suited to or best for the trust beneficiaries.

8.      As it is nearly impossible for trust beneficiaries to terminate or replace a trustee with investment authority or choose the investments the trustee makes, without this Court's intervention, Plaintiff and proposed Class members are powerless to prevent Defendants' continued financial self-dealing.

## II.     SYNOPSIS OF DEFENDANTS' BREACHES OF FIDUCIARY DUTY

9.      Defendants uniformly directed and invested the trust assets that they served as trustee over, in investment vehicles which Defendants had a direct or indirect financial interest in, ranging from proprietary mutual funds to hedge funds sponsored or managed by Defendants or related entities.

10.     Defendants failed to independently determine for each of the trusts in which they served as trustee that these investment decisions were in the best interests of the Plaintiff and the members of the proposed Class.

11.     Defendants failed to make individualized investment decisions for each of these trusts, instead placing the trust assets into investment vehicles in which Defendants had a financial interest.

12.     Defendants approved these investment vehicles, in whole or in part, because of Defendants' own financial interest, not because they had independently determined for the trust that these vehicles were in the best interests of the Plaintiff and the members of the proposed Class.

13.     Defendants also uniformly failed to continually and regularly evaluate the investments of the trust assets over which they had fiduciary responsibility to

determine if those investments remained in the best interests of the Plaintiff and the members of the proposed Class (if they were to begin with).

14.     By failing to continually and regularly evaluate those investments, Defendants uniformly failed to change investments or remove assets from investments if they were no longer appropriate and prudent investments for the Plaintiff and the members of the proposed Class.

15.     The defining characteristic of the investments that Defendants approved, selected and maintained, on behalf of Plaintiff and members of the proposed Class, is that Defendants benefitted, placed their self-interest above that of the Plaintiff and the class and/or otherwise profited directly and/or indirectly from those investments, through management fees or otherwise.

16.     Defendants' actions breach their fiduciary duty to act with the highest standard of care towards the trusts they oversee and the beneficiaries of those trusts.

17.     Plaintiff, acting on her own behalf and that of all others similarly situated, brings this case to prevent and end Defendants' uniform and continuous breach of their fiduciary duties.

III.    PARTIES

     A.    PLAINTIFF AND CLASS REPRESENTATIVE

18.     Plaintiff **ASHBY HENDERSON ("Plaintiff" or "Henderson")** is a resident of Maryland. Plaintiff is an income beneficiary of the Walter H. Wesson Trust (the "Wesson Trust"), a trust created under the laws of Massachusetts that is managed by the Defendants in Massachusetts.

19.     Defendants' trust accounting statements for the Wesson Trust represent that BNY Mellon Wealth Management serves as trustee of the Wesson Trust.

20.     According to Defendant BNY Mellon Corp's filing with the Securities and Exchange Commission on Form 10-K for the fiscal year ending December 31, 2013, the Wealth Management business is housed under Defendant BNY Mellon, N.A.

21.     As a trust beneficiary of the Wesson Trust, Plaintiff has suffered harm due to the misconduct of the Defendants.

22.     The Class consists of all persons or entities, from 1998 to the present, who were grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, (2) for which Defendants had investment discretion or recommendation responsibility over principal and/or income, and (3) which had trust assets invested in investments that were financially affiliated with Defendants.

**B.     DEFENDANTS**

23.     Defendant **BANK OF NEW YORK MELLON CORPORATION ("BNY Mellon Corp.")** is a Delaware corporation with headquarters at One Wall Street, New York, New York 10286.

24.     BNY Mellon Corp. was formed after the July 1, 2007 merger of The Bank of New York Mellon Company, Inc. and Mellon Financial Corporation.

25.     BNY Mellon Corp. is the parent of Defendant BNY Mellon, National Association.

26.     According to BNY Mellon Corp's Form 10-K for the year ended December 31, 2013, BNY is described as "a global investments company headquartered in New York, New York, with $27.6 trillion in assets under custody and/or administration and $1.6 trillion in assets under management as of December 31, 2013."

27.     Defendant **BNY MELLON, NATIONAL ASSOCIATION ("BNY Mellon, N.A.")** is a nationally chartered bank which houses the Wealth Management business for BNY Mellon Corp. BNY Mellon, N.A. is headquartered at 1 Mellon Center, 500 Grant Street, 47th Floor, Pittsburgh, Pennsylvania.

28.     BNY Mellon, N.A. has very significant trust operations throughout the United States and has branches, offices, officers and agents throughout the United States. Defendant BNY Mellon, N.A. is a wholly owned subsidiary of BNY Mellon Corp., which operates through two principal banks.

29.     BNY Mellon, N.A. is the principal bank that handles Defendant BNY Mellon Corp's Wealth Management business.

30.     The Bank of New York Mellon is a New York state chartered bank, which houses BNY Mellon Corp's Investment Services businesses. Both are subsidiaries of BNY Mellon Corp.

31.     Defendant **THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION ("BNY Mellon Trust")** is a nationally chartered bank which is headquartered at 400 South Hope Street, Los Angeles, California. BNY Mellon Trust handles significant trust operations for BNY Mellon Corp. in the United States. Defendant BNY Mellon Trust is a subsidiary of Defendant BNY Mellon Corp.

32.     At all relevant times, Defendant BNY Mellon Corp. controlled the business activities of Defendants BNY Mellon, N.A. and BNY Mellon Trust.

33.     There are additional subsidiaries and affiliates of the Defendants, as well as natural persons, whose identities are presently unknown to Plaintiff and that Plaintiff is informed and believed participated in the alleged wrongful acts.

## IV.   JURISDICTION AND VENUE

34.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1711, the Class Action Fairness Act of 2005, and 28 U.S.C. § 1367.

35.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between Plaintiff and each of the Defendants.

36.     This Court has personal jurisdiction over Defendants because each of them conducted business in the District of Massachusetts on a regular and continuous basis during the relevant time period.

37.     Defendant BNY Mellon Corp. conducts substantial business within this District.

38.     Defendant BNY Mellon Corp. is the parent corporation of Defendants BNY Mellon, N.A. and BNY Mellon Trust.

39.     The Wesson Trust was created under the laws of the Commonwealth of Massachusetts.

40.     Plaintiff is a beneficiary of the Wesson Trust.

41.     Defendants serve as the trustee of the Wesson Trust.

42.     The Wesson Trust is managed by Defendants in Massachusetts.

43.     The uniform practices and policies that are at issue in this litigation were formulated and/or developed in this District.

44.     Venue is proper in this District in that the Defendants do substantial business in this District.

45.     In addition, many witnesses to Defendants' wrongful acts reside in or did business within this District.

46.     The District of Massachusetts is the locus of the wrongdoing that has occurred to Plaintiff, who is the income beneficiary of a trust created under the laws of the Commonwealth of Massachusetts and managed in the Commonwealth of Massachusetts.

## V.     APPLICABLE LAW: TRUSTEES OWE THE HIGHEST DUTY OF CARE TO TRUST BENEFICIARIES

47.     Upon acceptance of a trusteeship, a national bank must administer the trust in accordance with applicable law.

48.     The Defendants' duties as a professional trustee to the beneficiaries of the trusts it administers include the rigorous duty to invest prudently under the common law Prudent Investor Rule (Restatement of Trusts 3d §227), and the Uniform Prudent Investment Act codified in most of the states, including Massachusetts (M.G.L. c. 203C §1, *et al.*).

49.     As a corporate trustee, Defendants, under the Uniform Prudent Investor Act and the common law of trusts universally applied throughout the United States, as

well as the federal banking regulations commonly known as Regulation 9 (12 C.F.R. §9),

have the most exacting fiduciary duties known to the law.

50.     The Office of the Comptroller of the Currency ("OCC") has set forth

fundamental guidelines as to the corporate fiduciaries' conduct by stating:

> when selecting a mutual or money market investment, a trustee
> should evaluate the return being paid, the composition and length
> of maturities of its portfolio, the funds management and all other
> factors relevant to the suitability of the investment for the
> customers.

51.      In the OCC handbook entitled, *Personal Fiduciary Services*, dated August

2002, the OCC stated:

> Consumer protection statutes and regulations may be applied to
> the activities of personal trusts and a national Bank is responsible
> for ensuring that the trust for which it serves as trustee complies
> with applicable consumer protection laws and regulations. Failure
> to do so can result in a bank's breach of the bank's fiduciary
> responsibilities, beneficiary litigation, and financial and
> reputational damage to the bank.

52.     Federal bank regulators, including the OCC and the Board of Governors

of the Federal Reserve, as well as trust commentators, such as The Law of Trusts (Scott),

have repeatedly made clear that a national bank trustee must have clear internal

policies and procedures regarding investments, and must engage in analysis and

assessment of the appropriateness of investments for individual accounts and whether

those investments are in the best interests of account beneficiaries.

53.     Violations of laws and regulations may constitute a breach of trust for

which the trustee can be held liable.

54.    Under the Uniform Prudent Investor Act, which in turn codifies the investment rules of the common law of trusts, found in Section 90 of the Restatement of Trusts (Third), every trustee has a duty to exercise independent judgment in making investments, and to not act imprudently when selecting investments.

55.    Corporate fiduciaries may not avoid liability for imprudent investing simply by choosing a mutual fund or mutual funds as investments.

56.    A trustee must manage and invest the trust assets that the trustee is responsible for as a prudent investor would.

57.    A trustee's investment management decisions relating to assets and courses of action are evaluated in the context of an overall investment strategy.

58.    A trustee must consider such matters as economic conditions, the expected rate of return from an investment, the costs to the trusts and beneficiaries and the availability of other financial investments to the trustee.

59.    Trust law squarely holds that these duties may be breached in the *complete absence of any fraud* and that one may state a cause of action for a violation of the duty of prudent investing regardless of whether fraud occurs.

## VI.    FACTUAL ALLEGATIONS

### A.    DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES TO THE CLASS

60.    Defendants are the managing trustee of the Wesson Trust.

61.    Defendants are also the managing trustee for trust accounts of thousands of trusts, with thousands of trust beneficiaries.

62.     Defendants therefore owed a duty to thousands, if not tens of thousands of individuals and entities who are members of the proposed Class..

63.     As a corporate fiduciary, under the Uniform Prudent Investor Act and the common law of trusts applicable in the Commonwealth of Massachusetts and throughout the nation, Defendants have and continue to be held to the highest standard of care with regard to the duty of prudence, in administration of Plaintiff's trust and the trusts of those where Defendants serve as managing trustee.

64.     Defendants breached their fiduciary duty to Plaintiff and each proposed Class member by: (1) failing to establish investment policies; (2) failing to adopt procedures for periodic review and comparison with other available investment vehicles; (3) failing to establish an arm's-length process for evaluating the prudence of investing trust accounts in financially related investment vehicles rather than in non-affiliated investments, and (4) failing to conduct on-going comparisons of investment vehicles in which Defendants had a financial interest to peer group performances.

65.     In breach of the Prudent Investor Rule and their fundamental duties as fiduciary, Defendants have improperly approved financially related investment vehicles, such as proprietary mutual funds and hedge funds sponsored by and/or managed by entities related to the Defendants, as appropriate investments for their trust beneficiaries.

66.     Under a uniform policy, Defendants have improperly designated their own proprietary mutual funds, hedge funds and other investment vehicles as "approved" investments for trust assets that Defendants owe the highest fiduciary duty

to manage in the best interests of Plaintiff and members of the proposed Class.

67.     Defendants approved investment vehicles for trust assets as acceptable investments because they were financially linked to the Defendants, even though these investment vehicles were inferior to non-affiliated investment vehicles.

68.     For example, Defendants approved a number of proprietary mutual funds as appropriate investments that were ranked one or two stars by Morningstar.

69.     Morningstar is a well-respected company that rates mutual funds on a five star ranking system based on their analysis of the quality of those mutual funds.

70.     In breach of the Prudent Investor Rule and their fundamental duties as fiduciary, Defendants have improperly invested trust assets they manage into Defendants' own financially related investment vehicles, such as proprietary mutual funds and hedge funds sponsored by and/or managed by entities related to the Defendants.

71.     Under a uniform policy, Defendants have improperly placed the vast majority of the trust assets of their trust beneficiaries into mutual funds, hedge funds and investment vehicles that are either issued by, managed by, sponsored by or otherwise related to the Defendants.

72.     For example, when Defendants used mutual funds as investment vehicles for Plaintiff, Defendants invested Plaintiffs' trust assets almost exclusively in proprietary mutual funds or mutual funds in which Defendants have some financial interest.

73.     Defendants have proprietary mutual funds which are sponsored and/or managed by Defendants, such as the BNY Mellon and Dreyfus family of mutual funds.

74.     Similarly, when Defendants used alternative investments as investment vehicles for Plaintiff, Defendants invested Plaintiffs' trust assets almost exclusively in hedge funds that Defendants have a financial interest in.

75.     Defendants sponsor and/or manage hedge funds, such as the Mellon Optima L/S Strategy FD LLC hedge fund, in which Defendants are financially compensated, such as through management fees.

76.     Beyond mutual funds and hedge funds, there are numerous investment vehicles that Defendants have a direct or indirect financial interest in, such as through management fees or through an ownership interest in the investment vehicle.

77.     Defendants acted imprudently in their investment decisions by choosing to uniformly place trust assets – assets that they had legal ownership of and the power to invest-- in Defendants' own proprietary or sponsored investment vehicles irrespective of the appropriateness of those investments, even when it was apparent that there were better options for the trust beneficiaries.

78.     Separate from the trust department, Defendants offer brokerage and investment advisory services to investors.

79.     In regard to brokerage and investment advisory services to investors, Defendants offer non-affiliated funds as potential options for investors to select.

80.     Defendants have evaluated and approved non-affiliated funds for their non-trust brokerage clients - who, unlike trust beneficiaries, are investors who have

ultimate control over their investments and can fire the Defendants if not satisfied.

81.     Defendants routinely and uniformly favor and direct investment of trust assets into financially related investments, such as proprietary investment funds, even though non-affiliated funds have been evaluated by and approved by Defendants for their brokerage and investment advisory service clients.

82.     Defendants routinely and uniformly selected financially related investment funds over non-affiliated mutual funds (or other similar collective investments), regardless of whether these non-affiliated investments are better performing and/or lower cost.

83.     In breach of the Prudent Investor Rule and their fundamental duties as fiduciary, Defendants did not engage in any analysis or assessment (individualized or otherwise) of what investments were in the best interests of Plaintiff and the members of the proposed Class.

84.     Under a uniform policy, Defendants have eliminated the individualized fiduciary services to which all beneficiaries are entitled.

85.     In place of providing individual and appropriate investment services to trust beneficiaries, Defendants have designated their own proprietary mutual funds and other investment vehicles financially related to Defendants as "approved" investments and then driven the monies that they are responsible for managing prudently, as trustee, towards those proprietary mutual funds and related investment vehicles.

86.     In the end, as a matter of uniform policy, Defendants invested assets they were entrusted to manage towards investments that benefited the Defendants, not investments that were most suited or best for the Plaintiff and members of the proposed Class.

87.     In breach of the Prudent Investor Rule and their fundamental duties as fiduciary, Defendants' investment decisions were influenced, in whole or in part, to favor financially related investments instead of always putting the best interests of the Plaintiff and members of the proposed Class first, as required by law.

88.     Under a uniform policy, Defendants failed to consider, failed to approve and/or strongly disfavored non-affiliated investment vehicles.

89.     For those trust assets that are invested in mutual funds, Defendants heavily favor mutual funds that are financially related to Defendants, such as those in which Defendants earn a management fee, even if non-affiliated mutual funds are better performing and/or have a lower cost.

90.     Similarly, for those trust assets that are invested in hedge funds, Defendants heavily favor hedge funds that are financially related to Defendants over non-affiliated hedge funds.

91.     The Defendants knew or should have known by virtue of their positions at a large financial services company that better-performing, lower cost, comparable investment funds were available from unaffiliated entities.

92.     In making investment decisions on behalf of those that Defendants owe a fiduciary to, the Defendants should have selected investments based on what was best

for the trust and its trust beneficiaries, even if that meant selecting better performing, lower cost, comparable investment funds from unaffiliated entities.

93.     In breach of the Prudent Investor Rule and their fundamental fiduciary duties, Defendants failed to continually review and evaluate the investments that trust assets were placed in to ensure that they remain the best investments for Plaintiff and the members of the proposed Class.

94.     Under a uniform policy, Defendants did not require their agents, employees, independent contractors, financial advisors and/or representatives to continually review and evaluate the trust assets that Defendants had a fiduciary duty to manage in the best interests of Plaintiff and the members of the proposed Class.

95.     In breach of the Prudent Investor Rule and their fundamental duties as fiduciary, Defendants failed to remove trust assets they managed from inferior quality investments or investments that were no longer in the best interests of the trusts and the trust beneficiaries, because those investments were financially related to Defendants.

96.     Under a uniform policy, Defendants' staff were not allowed to and/or were strongly discouraged from removing trust assets from financially related investments, such as proprietary mutual funds, even if they were of inferior quality to non-affiliated investments, performed worse, or had higher costs.

97.     At all relevant times, Defendants knowingly participated in the actions and decisions as generally set forth in this Complaint.

98.     Defendants' conduct, as alleged in this Complaint, was conducted, approved and/or ratified at the highest corporate levels of the Defendants, and violated the core duty of a trustee to invest prudently.

99.     Defendants breached their fiduciary duty to Plaintiff and each proposed Class member by failing to perform an objective analysis to determine whether these related investment vehicles were optimal investments for the Wesson Trust, or for any other trust account.

100.    Defendants breached their fiduciary duty to Plaintiff and each proposed Class member by investing trust assets in financially related investment vehicles that did not have proven investment track records.

101.    In doing so, Defendants spurned non-affiliated investment vehicles with a more established investment track record, with superior performance and lower costs.

102.    Defendants breached their fiduciary duty to Plaintiff and each proposed Class member by refusing to divest investments in those financially related investment vehicles, even though they substantially underperformed compared to other available investment vehicles.

103.    Throughout the Class Period, Defendants concealed their wrongdoing by failing to disclose their policies, practices and procedures as discussed below, all of which are in violation of their fiduciary duties. Plaintiff did not know nor suspect the wrongdoing alleged in this complaint until this year. Regardless, Plaintiff could not have discovered such wrongdoing even if she had conducted a reasonable investigation. Plaintiff reasonably believed that Defendants made investment decisions

with trust assets with her best interests and the best interests of the members of the proposed Class being the central motivating factor in their investment decision-making.

**B.     DEFENDANTS HAVE VIOLATED THEIR FIDUCIARY DUTIES TO PLAINTIFF AND THE CLASS**

104.     Plaintiff seeks redress for herself and on behalf of tens of thousands of others who are affected by Defendants' breach of their fiduciary duties, including the grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts.

105.     In the exercise of their legal ownership of and authority to invest the trust assets, Defendants have invested the trust assets of Plaintiff and the Wesson Trust in investment vehicles that profit the Defendants, through management fees or other means.

106.     In regard to mutual funds, Defendants invested almost exclusively with proprietary mutual funds that are related to Defendants.

107.     In the case of Plaintiff, Defendants invested in funds, such as the BNY Mellon Municipal Opportunities Fund, which are issued by BNY Mellon Funds and managed by BNY Mellon Fund Advisors, both of which are related to the Defendants.

108.     Defendants also invested in mutual funds that were linked to Defendants, such as the Dreyfus High Yield Fund, which is managed by The Dreyfus Corporation.

109.     The Dreyfus Corporation merged with Mellon Financial in 1994 and became a subsidiary of the Defendants when Mellon Financial and The Bank of New York merged in 2007.

110.    Even ostensibly independent mutual funds that Defendants selected for the trust assets that they managed, were and are linked to Defendants.

111.    For example, a small portion of Plaintiff's portfolio is invested with TCW Emerging Markets Income Fund.

112.    TWC Emerging Markets Income Fund is managed by TCW Investment Management Company, a subsidiary of the TCW Group, Inc.

113.    Defendants have had a longstanding contract with TCW since 2001.

114.     Since then, BNY Mellon Asset Servicing has provided support for TCW's entire back- and middle-office investment operations, including trade processing, bank loan processing, investment accounting, partnership accounting, performance, attribution, analytics, financial statements, client billing, and client statements.

115.    On August 9, 2007, BNY Mellon and TCW announced a renewal of that outsourcing agreement for an additional five years.

116.    At that time, TCW President William Sonneborn stated that "We look forward to continuing our partnership with BNY Mellon Asset Servicing."

117.    In regard to Defendants' investments in mutual funds, none of the choices made by Defendants were untainted by their own pecuniary self-interest.

118.    Even in alternative investments, Defendants' invariably and uniformly directed the investment assets of trust beneficiaries to themselves.

119.    For Plaintiff and the Wesson Trust, a significant portion of Plaintiff's alternative investments are in a hedge fund managed by Mellon Hedge Advisors LLC.

120.    Indeed, that hedge fund is amongst the largest single investments in the trust account for which Plaintiff is a trust beneficiary.

121.    Defendants' investment decisions on behalf of Plaintiff and the Wesson Trust have violated the trustee's duty of care or prudence.

122.    Defendants' uniform investment decisions on behalf of the members of the proposed Class similarly violate the trustee's duty of care or prudence.

### C.    DEFENDANTS' ACTIONS HAVE CAUSED INJURY

123.    Defendants' decisions, in violation of their fiduciary duties, harmed Plaintiff and the members of the proposed Class by depriving their trusts of the opportunities to invest in mutual funds, hedge funds, alternative investments, and other collective funds that were recognized as superior in performance, and less risky.

124.    Defendants' decisions, in violation of their fiduciary duties, also deprived Plaintiff and the members of the Class of the best services of the Defendants, who made investment decisions based on the financial benefit to the Defendants, not based on the best interests of the trusts and of the trust beneficiaries, in violation of the trust laws of the Commonwealth of Massachusetts and the United States.

125.    Defendants knew that the decision to invest the trust assets that they managed in their own financially related investment vehicles was imprudent.

126.    Defendants knew that no additional benefit to Plaintiff or the proposed Class would result from the investment in these related investment vehicles.

127.    Plaintiff and the class members have been damaged and have been deprived of better investments and of their right to prudent investment of their trust assets by a trustee.

128.    The uniform policy and practice of the Defendants in failing to consider investing the trust assets they managed in non-affiliated investments and instead implementing uniform policies and practices that favored Defendants' financially related investment vehicles came at the expense of the Plaintiff and the proposed Class.

D.    **ONLY DEFENDANTS, AND NOT THE BENEFICIARIES, HAD THE AUTHORITY TO MAKE THE INVESTMENT DECISIONS**

129.    Barring Court intervention, trust beneficiaries, who are part of the proposed Class, have little or no ability to hire or fire the trustee, terminate the trustee's investment authority or direct the investments that the trustee is duty bound to make. (*See e.g.* Restatement, Trusts, Section 78 (Duty of loyalty), Comment b.)

130.    Plaintiff Ashby Henderson, and other members of the proposed Class, are beneficiaries of trusts in which they lacked the power to make the investment decisions.

131.    Therefore, even if they believed that an investment was imprudent, they were and are powerless to unilaterally change any investment acts of the Defendants, unless a Court intervenes.

E.    **THIS COMPLAINT DOES NOT ALLEGE DEFENDANTS ENGAGED IN MISREPRESENTATIONS, FRAUDULENT OMISSIONS OR FRAUDULENT PRACTICES THAT ARE MATERIAL TO THE DECISION TO BUY OR SELL "COVERED SECURITIES"**

132.    This Plaintiff and this Complaint do not allege in any fashion that Defendants engaged in misrepresentations, fraudulent omissions, or fraudulent

practices that are material to the decision by one or more individuals (other than any alleged fraudster) to buy or sell a "covered security" as defined by 15 U.S.C. § 78bb(f)(5)(E) under the Securities Litigation Uniform Standards Act ("SLUSA").

133.    The claims in this Complaint are entirely based on hornbook trust law: alleged breaches of the duty of prudent investing.

134.    This is a trust case regarding the failure of the Defendants to prudently invest the funds of Plaintiff and the members of the proposed Class.

135.    As such, the Defendants' liability turns on whether or not they conformed to fundamental fiduciary standards of prudence applicable to all corporate trustees in terms of:

> (1) the investment vehicles that Defendants deemed were "approved" for investing trust assets that Defendants oversaw, (2) the investment vehicles that Defendants ultimately selected for investing trust assets that Defendants oversaw, (3) the failure by Defendants to make individualized decisions for each of the trusts that they oversaw, (4) the failure by Defendants to continually review and evaluate the investments that the trust assets they oversaw were invested in, and (5) the failure by Defendants to remove trust assets from inferior quality investments because such inferior quality investments were financially linked to Defendants.

136.    The fiduciary standard owed by Defendants to Plaintiff and the proposed members of the Class, include generally accepted practices rules and regulations established by the Office of the Comptroller of the Currency, the FDIC and the common law on trusts.

137.    The recurring theme of Defendants' conduct, which is a violation of their fiduciary duties, is that Defendants allowed their own financial interest in certain investment vehicles, such as proprietary mutual funds, to influence their decision-

making process in regard to investing trust assets, instead of always putting the interests of the trusts and the trust beneficiaries at the forefront, as required by the law.

138.    In *Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1066 (2014), the United States Supreme Court stated that "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to the decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security.'"

139.    In this case, the Plaintiff and the members of the proposed Class are trust beneficiaries of trusts managed by Defendants.

140.    Defendants (as trustee), not the Plaintiff and the members of the proposed Class (as trust beneficiaries), have the authority to make investment decisions in regard to the trust assets.

141.    As such, this case is not in regard to fraudulent misrepresentations or omissions that are material to the decision of any individual (other than the fraudster) to buy or sell a "covered security."

142.    Furthermore, the Ninth Circuit of Appeals has held, in an opinion in a similar case that: "[w]e believe, however, that a complaint may allege a violation of a trust administrator's fiduciary duty to a trust's beneficiaries even where that violation involves trading in covered securities so long as the complaint does not allege, either expressly or implicitly, misrepresentations, omissions, or fraudulent practices coincidental to the violation." *Stoody-Broser v. Bank of America, N.A. et al.*, No. 09-17112, 2011 WL 2181364 (9th Cir. June 6, 2011), at *1.

143.    Plaintiff does not allege, expressly or implicitly, any misrepresentations, omissions or fraudulent practices in connection with any "covered securities" that is coincidental to the violation.

## VII.   CLASS ACTION ALLEGATIONS

144.    Plaintiff brings this action on her own behalf and on behalf of all persons similarly situated, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a Nationwide Class:

> From 1998 to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, (2) for which Defendants had investment discretion or recommendation responsibility over principal and/or income, and (3) which had trust assets invested in investments that were financially affiliated with Defendants.  Excluded from the Nationwide Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government.

145.    **Numerosity**: The Defendants serves as the trustee for thousands, if not tens of thousands of trusts, each of which may have multiple trustors, grantors, trust beneficiaries, remaindermen, co-trustees and/or successor trustees. The Defendants also serve as trustee for trusts throughout the United States. Plaintiff does not know the exact number and identities of these purchasers but their identities are presumably known by Defendants. The large number of potential Class members and that fact that they are geographically dispersed makes joinder of all members impracticable.

146.    **Common Questions of Law or Fact:** The questions of law and fact common to proposed Class members predominates over any questions affecting only

individual proposed Class members. The questions of law and fact common to the

proposed Class members include, without limitation:

    a.    whether the Defendants' corporate policy and practice of designating related investment vehicles, such as proprietary mutual funds and hedge funds sponsored or managed by the Defendants, as appropriate investments for trust beneficiaries, has violated the Defendants' duty of prudent investing;

    b.    whether the Defendants' corporate policy and practice of failing to invest trust funds in non-affiliated investment vehicles, such as proprietary mutual funds, hedge funds managed by the Defendants or their related entities, or other collective investments and instead investing trust funds in related investment vehicles has violated the Defendants' duty of prudent investing;

    c.    whether the Defendants' refusal to divest its trust accounts from the related investment vehicles that were underperforming was a breach of the Defendants' duty of prudent investing;

    d.    whether a declaratory judgment should issue that the Defendants violated their duties as Trustee with respect to the affected trust accounts;

    e.    whether Plaintiff and the Class members are entitled to injunctive relief;

    f.    whether Plaintiff and the Class members are entitled to restitution, disgorgement, and/or other equitable relief and the measure of such relief; and

    g.    whether Plaintiff and the Class members are entitled to compensatory damages according to proof and the measure of such relief.

147.    **Typicality:** Defendants' breaches of fiduciary duty are uniform to the

proposed Class members. The Defendants invested the assets of the Wesson Trust in

related investment vehicles, such as the proprietary BNY Mellon and Dreyfus mutual

funds, pursuant to a corporate policy that affected all trust accounts in a uniform

manner and was not made with any individual account characteristics in mind. The

Defendants' refusal to divest those related investment vehicles which performed poorly

was also made pursuant to a corporate policy and affected all trust accounts in a

uniform manner. Plaintiff's claims are typical of those the members of the Class.

Plaintiffs' interests are coincident with and not antagonistic of the members of the Class.

148.    **Fair and Adequate Representation of the Class**: Plaintiff's claims are

typical of the claims of the other members of the Class. Plaintiff will fairly and

adequately protect the interests of the members of the Class. In addition, Plaintiff is

represented by counsel who are highly skilled and experienced in the prosecution of

complex class actions and trust cases. Plaintiff and their counsel are more than capable

of fairly and adequately protecting the interests of the Class.

149.    **Superiority of the Class Action Device:** The prosecution of separate

actions by individual members of the Class would create a risk of inconsistent or

varying adjudications.  The questions of law and fact common to the members of the

Class predominate over any questions affecting only individual members, including

legal and factual issues relating to liability and damages. A class action is superior to

other available methods for the fair and efficient adjudication of this controversy.

Treatment as a class action will permit a large number of similarly situated persons to

adjudicate their common claims in a single forum simultaneously, efficiently and

without duplication of effort and expense that numerous individual actions would

engender. The Class is readily definable and is one for which records should exist in the

files of Defendants and their co-conspirators, and prosecution as a class action will

eliminate the possibility of repetitious litigation. Class treatment will also permit the adjudication of relatively small claims by many members of the Class who otherwise could not afford to litigate an antitrust claim such as the ones asserted in this Complaint. Plaintiff knows of no unusual difficulty that will be encountered in the management of this action as a class action.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty)

150.   Plaintiff incorporates and realleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows:

151.   At all relevant times the Defendants, as the corporate trustee of the affected trusts, was in a fiduciary relationship with Plaintiff and the members of the proposed Class.

152.   As trustee, the Defendants had the power and responsibility to administer and invest the trust assets in the best interests of the trust beneficiaries, and no one else.

153.   Conversely, the trust beneficiaries had no control over the investments.

154.   The Defendants' duties as a professional trustee to the beneficiaries of the trusts it administers include the rigorous duty to invest prudently under the common law Prudent Investor Rule (Restatement of Trusts 3d §227), and the Uniform Prudent Investment Act codified in most of the states, including the the Massachusetts Prudent Investor Act (M.G.L. c.203C §1, *et al.*).

155.   Defendants breached their fiduciary duty to Plaintiff and the members of

the proposed Class by approving investments for trust assets under their management because they were financially related to Defendants, such as proprietary mutual funds and investment vehicles that were sponsored and/or managed by Defendants.

156.    Defendants breached their fiduciary duty to Plaintiff and the members of the proposed Class by directing, placing and investing trust assets under their management into investments that were financially related to Defendants, such as proprietary mutual funds and investment vehicles that were sponsored and/or managed by Defendants.

157.    Defendants breached their fiduciary duty to Plaintiff and the members of the proposed Class by failing to properly administer the trust, including but not limited to making individualized decisions in the best interests of the trusts and trust beneficiaries that Defendants owed a fiduciary duty to.

158.    Defendants' continuing policy and acts set out above by which they refuse to consider and/or strongly disfavor non-affiliated investment vehicles or other collective investments for the trusts, while investing trusts in their own inferior investment vehicles in which Defendants had a financial interest, was and is a breach of the Defendants' duty to invest prudently.

159.    Defendants breached their fiduciary duty to Plaintiff and the members of the proposed Class by failing to consistently and continually monitor, evaluate and review the investments that trust assets are placed into in order to ensure that those investments remain in the best interests of Plaintiff and the members of the proposed Class.

160.    Defendants breached their fiduciary duties to Plaintiff and members of the proposed Class by failing to remove trust assets from investment vehicles when those investment vehicles were no longer in the best interests of Plaintiff and the members of the proposed Class.

161.    As a proximate result of said breaches of fiduciary duty, Plaintiff and every proposed Class member have sustained damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

162.    Plaintiff incorporates and realleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows:

163.    As a result of the misconduct alleged herein, Defendants unjustly received a benefit at the expense of Plaintiff and members of the proposed Class.

164.    That benefit consists primarily of the management fees and other financial benefits that Defendants unjustly obtained from the trusts they supposedly had the highest fiduciary duties to, by investing in investment vehicles, such as proprietary mutual funds, that the Defendants had a vested financial interest in.

165.    Defendants retain financial benefits, such that it would be unjust to allow Defendants to retain such benefits.

166.    These financial benefits were obtained from their misconduct as alleged herein, and it would unfair and unjust to allow Defendants to without providing compensation to Plaintiff and the members of the proposed Class.

167.    Defendants acted with conscious disregard of the rights of Plaintiff and the members of the proposed Class.

168.    Plaintiff and members of the proposed Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their misconduct.

### THIRD CAUSE OF ACTION
### (Accounting)

169.    Plaintiff incorporates and realleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows:

170.    Plaintiff and the members of the proposed Class are the beneficiaries of trusts that are managed by Defendants as a trustee.  As such, Defendants owe Plaintiff and the members of the proposed Class a fiduciary duty.  Due to that fiduciary relationship, Defendants owe an obligation to Plaintiff and members of the proposed Class with an accounting of their trust accounts.

171.    Accordingly, it is necessary and appropriate for this Court to order an accounting of the trust accounts of the Plaintiff and members of the proposed Class.

### IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendants, jointly and individually, as follows:

1.    For certification of this action as a class action with Plaintiff selected as the representative of the Class and her counsel as Class counsel;

2.    For injunctive relief prohibiting Defendants from continuing to engage in or resuming the unlawful or unfair business policy practices described in this Complaint;

3.      For compensatory damages in an amount sufficient to fully compensate
        for all harm caused by Defendants;

4.      For an accounting;

5.      For disgorgement of trustee fees;

6.      For an accounting of each of the Class Trusts;

7.      For restitution for the monies that Defendants unjustly reaped from
        Plaintiff and each Class member;

8.      For a constructive trust on the assets of Plaintiff and each Class member
        which Defendants have wrongfully withheld;

9.      For pre-judgment and post-judgment interest at the maximum rate
        allowable by law;

10.     For appointment of a guardian ad litem, or Trust Protector, with the
        power to choose another Trustee;

11.     For costs of suit, including reasonable attorneys' and experts' fees; and

12.     For such other and further relief as the Court may find just and proper.

### DEMAND FOR JURY TRIAL

On behalf of herself and the Class, Plaintiff hereby requests trial by jury as to all issues so triable.


Dated: February 27, 2015

> */s/ John Roddy*
> John Roddy, BBO # 424240
> jroddy@baileyglasser.com
> **BAILEY & GLASSER LLP**
> 99 High Street, Suite 304
> Boston, MA 02110
> Telephone:    (617) 439-6730
> Facsimile:    (617) 951-3954

Gregory Y. Porter (*pro hac vice pending*)
gporter@baileyglasser.com
**BAILEY & GLASSER LLP**
910 17th Street, NW
Suite 800
Washington, DC 20004
Telephone:    (202) 543-0226

Jack W. Lee (*pro hac vice pending*)
jlee@minamitamaki.com
Derek G. Howard (*pro hac vice pending*)
dhoward@minamitamaki.com
Aron K. Liang (*pro hac vice pending*)
aliang@minamitamaki.com
**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone:    (415) 788-9000
Facsimile:    (415) 398-3887

*Attorneys for Plaintiff and the Putative Class*