```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

```
_____
ASHBY HENDERSON,                    )
Individually and on Behalf of       )
Others Similarly Situated,          )
                                    )
               Plaintiff,           )
                                    )
v.                                  )     Civil Action
                                    )     No. 15-10599-PBS
                                    )
THE BANK OF NEW YORK MELLON         )
CORPORATION, et al.,                )
                                    )
               Defendants.          )
                                    )
_____)
```

**MEMORANDUM AND ORDER**

November 23, 2015

Saris, C.J.

**INTRODUCTION**

In this proposed nationwide class action, plaintiff Ashby Henderson, a trust beneficiary, alleges that the defendants, the Bank of New York Mellon, N.A. (BNY Mellon) and associated entities,[1] breached their fiduciary duty to thousands of beneficiaries of trusts for which BNY Mellon serves as trustee by imprudently investing the trust assets in poorly performing proprietary financial instruments. The state-law causes of

---

[1] The defendants are BNY Mellon N.A., BNY Mellon Corporation, and BNY Mellon Trust Company, N.A.

action are breach of fiduciary duty by failing to invest prudently (Count 1), allegations of unjust enrichment as a result of management fees and a request for restitution (Count 2), and a request for an accounting (Count 3).

The defendants have moved to dismiss on the ground that the claims are precluded by the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. § 77P. BNY Mellon Trust Company, N.A. and BNY Mellon Corporation also contend that they are separate corporate entities that are not directly or indirectly liable to the plaintiff. After hearing, the Court concludes that the state-law claims are not preempted and the defendants' motion to dismiss Henderson's claims against BNY Mellon, N.A. (Docket No. 23) is **DENIED**. The motion to dismiss the plaintiff's claims against BNY Mellon Trust Company, N.A. and BNY Mellon Corporation (Docket No. 25) is **ALLOWED** as to BNY Mellon Corporation.

**FACTUAL BACKGROUND**

The complaint alleges the following facts which are taken as true for the purposes of a motion to dismiss. Many of the facts are disputed.

The plaintiff is an income beneficiary of the Wesson Trust, managed by BNY Mellon as trustee.[2] The trustee had complete

---

[2] For purposes of the statement of facts, the Court refers to the trustee(s) as BNY Mellon. The defendants dispute that the

2

investment discretion and control over the trust assets, and the beneficiaries were unable to influence the investment decisions or remove the trustee without court intervention.

BNY Mellon invested the plaintiff's trust assets almost exclusively in proprietary mutual funds such as the BNY Mellon Municipal Opportunities Fund, managed by BNY Mellon Fund Advisors; the Dreyfus High Yield Fund, managed by a BNY Mellon subsidiary; and the TCW Emerging Markets Income Fund, managed by a company with a longstanding relationship with BNY Mellon. These investment decisions were motivated by BNY Mellon's own financial benefit rather than the best interests of the trust beneficiaries.

The trustee invested in proprietary funds even if non-affiliated funds were better performing or lower cost. Some of these proprietary funds were ranked one or two stars out of five by Morningstar, a well-respected fund rating company. The trustee failed to move assets from investments when they were no longer prudent, and discouraged staff from changing the investments, even if they were of inferior quality to non-related investments, performed worse, or had higher costs. The Bank concealed its self-dealing by failing to disclose its

---

plaintiff alleges sufficient facts to demonstrate that BNY Mellon Trust Company, N.A. and BNY Mellon Corporation also served as trustees.

policies and practices of investing in securities issued by mutual funds, hedge funds, and other investment vehicles that pay fees to its affiliates for investment management and other services.

In contrast to these investments in poorly performing funds, BNY Mellon approved non-proprietary investments for their brokerage customers, who could veto investment decisions or remove their money if dissatisfied with the defendants' investment choices.

## DISCUSSION

### I. Rule 12(b)(6) Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on [its] judicial experience and common sense." Schatz v. Republican

State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal quotations omitted).

The court will "accept as true all well-pleaded facts set forth in the complaint and draw all inferences therefrom in the pleader's favor." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011)). A complaint is susceptible to dismissal for failure to state a claim if it does not contain factual allegations "respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).

## II. SLUSA

The defendants argue that SLUSA precludes this class action because it is a "covered class action" which involves allegations of misrepresentations or omissions of material fact "in connection with the sale of covered securities." 15 U.S.C. § 77P. SLUSA reads as follows:

> CLASS ACTION LIMITATIONS. No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging
>
> (A)   misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> (B)   that the defendant used or employed any manipulative or deceptive device or contrivance in

5

> connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1)(A-B). For the most part, the parties do not dispute that both the class and the securities at issue are "covered" within the meaning of the statute.[3] However, they do dispute whether the complaint alleges misrepresentations and omissions of material facts in connection with the purchase and sale of securities.

Two key Supreme Court cases are the Scylla and Charybdis of SLUSA preemption. In the first case, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, the Supreme Court grappled with the definition of "in connection with" a purchase or sale of covered securities. 547 U.S. 71, 84 (2006). The complaint alleged that an investment banking firm breached its fiduciary duty and covenant of good faith and fair dealing that it owed its brokers by disseminating misleading research and thereby manipulating stock prices. Id. at 75. The question was whether allegations that brokers were fraudulently induced not to sell or purchase, but to retain or delay, selling their securities fell within SLUSA's preemption scope. Id. at 75, 84. The Court

---

[3] A covered class action is a lawsuit in which damages are sought on behalf of more than fifty people. 15 U.S.C. § 77P(f)(2); Hidalgo-Velez v. San Juan Asset Mgmt., Inc., 758 F.3d 98, 104 (1st Cir. 2014). Covered securities are those securities listed or authorized to be listed on a national stock exchange or issued by an investment company registered under the Investment Company Act of 1940. Id.

6

held that the class action of these so-called "holders" was precluded, pointing out that "the identity of the plaintiffs does not determine whether the complaint alleges fraud in connection with the purchase or sale of securities." Id. at 89 (internal quotations omitted). "It is enough that the fraud alleged 'coincide' with a securities transaction whether by the plaintiff or someone else." Id. at 85. The Court reasoned that adoption of a "broad construction," covering fraudulent conduct that touches a purchase or sale of a covered security, would promote SLUSA's goal "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the Private Securities Litigation Reform Act of 1995. Id. at 80, 86.

The next key case is Chadbourne & Parke LLP v. Troice, involving the purchase of uncovered securities (certificates of deposit not traded on a national exchange). 134 S. Ct. 1058, 1062 (2014). The allegation was that the defendants falsely told victims that the uncovered securities were backed by covered securities. Id. Holding that the claims were not precluded by SLUSA, the Supreme Court reasoned:

> A fraudulent misrepresentation or omission is not made in connection with [a] purchase or sale of a covered security unless it is material to a decision by one or more individuals (other than the fraudster) to buy or sell a covered security.

7

Id. at 1066 (emphasis added). Further, the "someone making that decision to purchase or sell must be a party other than the fraudster." Id. (emphasis added). "If the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a connection that matters." Id. The Troice Court distinguished the Dabit line of cases as all involving "a victim who took, tried to take, or maintained an ownership position in the statutorily relevant securities through purchases or sales induced by fraud." Id. Even though Troice did not overrule Dabit, the opinion cabined the broad construction courts had been giving to SLUSA. The First Circuit has recognized that the Troice Court "broke new ground in illuminating the contours of the 'in connection with' requirement." Hidalgo-Velez v. San Juan Asset Mgmt., Inc., 758 F.3d 98, 106 (1st Cir. 2014) (holding that a misrepresentation regarding the sale of uncovered securities was not preempted under SLUSA).

### A. Plaintiff's Allegations

The plaintiff alleges that the defendants breached their fiduciary duty by placing trust assets in underperforming proprietary funds, failing to individually evaluate trust investments, and failing to regularly evaluate their investment choices. The plaintiff is alleging breach of fiduciary duty through imprudent investment decisions, not fraud or deceit.

See, e.g., The Woodward Sch. for Girls, Inc. v. City of Quincy, 13 N.E.3d 579, 594 (Mass. 2014) (ruling the trustee acted imprudently in making investment decisions without committing fraud); Drulias v. Ade Corp., No. 06-11033, 2006 WL 1766502, at *2 (D. Mass. June 26, 2006) (ruling SLUSA does not apply to a breach of fiduciary duty claim based on conflict of interest).

The defendants highlight that the plaintiff has also alleged failure to disclose trustee self-dealing and they argue that any undisclosed self-dealing investment in covered securities by a trustee would be a fraud on the beneficiaries and be precluded by SLUSA. It is true that the plaintiff may not avoid SLUSA preemption by artful pleading. Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 300 (3d Cir. 2005). So if the gravamen of the complaint alleging breach of fiduciary duty really involves fraud, misrepresentations, schemes, or deceit, then this Court must analyze whether these allegations fall within SLUSA's ambit. See Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879 (8th Cir. 2002). However, even if the self-dealing allegations amount to a fraud claim, the fraud was not in connection with the purchase or sale of the covered securities except by the fraudster, i.e., the trustee. Here, the plaintiff, as a trust beneficiary, was powerless to buy or sell covered securities.

As a fallback, the defendants argue that Troice only dealt with the materiality element of the first prong of SLUSA regarding misrepresentations and not the second prong applicable to the instant case. However, the text of the second prong contains the same "in connection with the purchase or sale of a covered security" language as the first prong. 15 U.S.C. § 77P(b).

The defendants rely heavily on two pre-Troice cases finding SLUSA preemption which have allegations similar to those made by the plaintiff in this case. In Segal v. Fifth Third Bank, N.A., a beneficiary of trust accounts alleged that the defendant breached its fiduciary and contractual duties by investing in proprietary and higher fee accounts. 581 F.3d 305, 308 (6th Cir. 2009). The plaintiff alleged that the defendant engaged in misrepresentations, material omissions, and manipulation revolving around the Bank's decision to invest in proprietary mutual funds. Id. at 309-10.

Similarly, in Seipel v. Bank of Am., N.A., the plaintiffs alleged state-law claims that the defendants were unjustly enriched and breached the fiduciary duties they owed to the beneficiaries when they failed to disclose conflicts of interest in the selection of nationally traded securities. 526 F.3d 1122, 1124 (8th Cir. 2008). According to the plaintiffs, "even though higher-yielding and better-managed mutual funds were available

in the marketplace," the trustee favored its own funds because it could "indirectly extract additional fees and profits." Id. The Eighth Circuit held that the state-law claims were preempted because the fraud "coincided" with the Bank's purchase of shares in the mutual funds. Id. at 1127.

The analysis in both cases is foreclosed by Troice, because both cases rely on Dabit's broad holding that for SLUSA to preempt, the fraud may merely "coincide" with the purchase or sale of covered securities. Seipel, 526 F.3d at 1127; Segal, 581 F.3d at 312. After Troice, a mere coincidence of fraud with a transaction in covered securities will no longer suffice for SLUSA preemption.[4]

### III. <u>Corporate Liability by Affiliates</u>

The defendants argue that BNY Mellon alone made the investment decisions for the trust assets and that the affiliated corporations had no direct involvement in the process. The plaintiff responds that all entities were actively involved in investing the assets and all are directly liable for breach of fiduciary duty.

It is a well-settled general principle of corporate law that a parent corporation is not liable for the acts of its

---

[4] The plaintiff alleges that some of the defendants' proprietary funds are uncovered securities and therefore not within the ambit of SLUSA. I need not resolve this issue.

subsidiaries. United States v. Bestfoods, 524 U.S. 51, 61 (1998). However, "it has long been acknowledged that parents may be directly liable for their subsidiaries' actions when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management.'" Pearson v. Component Tech. Corp., 247 F.3d 471, 487 (3d Cir. 2001) (quoting Bestfoods, 524 U.S. at 64). The plaintiff alleges that, at all relevant times, the parent corporation, BNY Mellon Corporation, controlled the business activities of the other defendants. However, the plaintiff has pled no other facts necessary to show that the parent company was directly liable for trust management decisions. The plaintiff has also failed to plead any facts necessary to make a plausible showing under the tough standard for piercing the corporate veil under the laws of possible relevant jurisdictions. See Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 101 (D. Mass. 2015) (discussing Massachusetts and New York corporate veil-piercing law).[5]

---

[5] The Lothrop court outlined a twelve-factor test for evaluating veil piercing: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Lothrop, 95 F. Supp. 3d at 101.

With respect to BNY Mellon Trust Company, N.A., in her complaint, the plaintiff referenced a trust accounting letter from the defendants and attached the letter to her opposition. The accounting letter states: "BNY Mellon N.A. and/or its affiliated bank or trust company ("BNY Mellon") may, where permissible and appropriate invest your account in one or more pooled funds, including mutual funds." Docket No. 34, Exhibit B. The plaintiff argues that this trust accounting shows that the parent and sister corporations, BNY Mellon Corporation and BNY Mellon Trust Company, N.A., were directly involved in trust management and investment decisions. The letter specifically refers to an affiliated trust company, and defendants' counsel at the hearing conceded he did not know whether the letter was referring to the defendant or its affiliate. This reference in the letter provides sufficient factual backing to state a plausible claim for relief for direct liability against BNY Mellon Trust Company, N.A.

## ORDER

The defendants' motion to dismiss Henderson's claims against BNY Mellon, N.A. (Docket No. 23) is **DENIED**. The motion to dismiss the plaintiff's claims against BNY Mellon Trust

Company, N.A. and BNY Mellon Corporation (Docket No. 25) is

**ALLOWED** as to BNY Mellon Corporation.

 

 

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge