## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ASHBY HENDERSON**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**BNY MELLON, NATIONAL ASSOCIATION;**<br><br>**THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION,**<br><br>Defendants. | Case No. 1:15-cv-10599-PBS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Leave to File Granted March 3, 2016 |

### I.    INTRODUCTION AND SUMMARY OF NEW AMENDED CLAIMS

1.      This case arises from multiple breaches of fiduciary duties owed to trust beneficiaries by Defendants BNY Mellon, National Association ("BNY Mellon, N.A.") and The Bank of New York Mellon Trust Company, National Association ("BNY Mellon Trust") (collectively "BNY Mellon" or "Defendants").

2.      The original Complaint described a set of claims related to BNY Mellon's investment of trust assets. Those claims are the subject of an Order from this Court dated November 23, 2015 (Dkt. #72). Ms. Henderson makes no substantive changes to any aspect of those claims that were the subject of the Order. Any stylistic changes to those claims are intended only to allow for this amendment to add unrelated claims.

3.      This Amended Complaint adds new claims for relief arising from the preparation of tax returns, also referred to as "K-1s." These claims are described and otherwise referred to as the "tax preparation claims."

4.      As a corporate trustee, BNY Mellon owes a fiduciary duty, the highest known to the law, to the beneficiaries of the trusts Defendants administer. The duties to trust beneficiaries include acting solely in the interests of the beneficiaries, in a prudent and professional manner, and avoiding all possible conflicts of interest.

5.      This duty of loyalty and prudent administration includes an obligation to avoid such conflicts of interest as "self-dealing" while conducting the administration of trust assets.

6.      Through this amendment, Ms. Henderson alleges that BNY Mellon breached these duties with respect to tax preparation fees it takes from the trust. These claims are unrelated to many of the other earlier filed claims in this case concerning the investment of trust assets.

7.      Specifically, in violation of the duties of loyalty, candor, prudent administration, and avoidance of conflicts, BNY Mellon charged improper and excessive fees for routine preparation of fiduciary tax returns and delegated tax preparation to an outside agent (Price Waterhouse Cooper) that charges much less than the tax preparation fees that BNY Mellon takes from the trusts.

8.      BNY Mellon failed to provide a proper accounting to the trust beneficiaries of the amounts improperly taken related to tax preparation fees and services. These failures to account include, without limitation: (1) the failure to disclose

2

any account statements that BNY Mellon is required by law to provide to trust beneficiaries; (2) the delegation of tax preparation by BNY Mellon to an accounting firm; and (3) the actual fees charged by the trustee as required by trust law. As such, BNY Mellon must return to the Class all the tax preparation fees at issue.

9.      Section 5 of the Uniform Prudent Investor Act, entitled "Loyalty," states that "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries."

10.     The law mandates this duty of loyalty where all investment decisions are vested in the trustee. The legal counterpoint to the trustee's authority is the trustee's obligation to act solely in the best interests of the beneficiary, to whom all of the trust's benefits belong. *See, e.g., Rutanen v. Ballard*, 424 Mass. 723, 731, 678 N.E.2d 133, 139-140 (1997); *Boston Safe Deposit & Trust Co. v. Lewis*, 317 Mass. 137, 140, 57 N.E.2d 638, 640 (1944) ("A trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust. He must lay aside self-interest when it becomes adverse to the cestui que trust, for the office of trustee cannot be subverted to fostering the personal advantage or individual gain of the incumbent.")

11.     Professional trustees, such as BNY Mellon, are held to the highest standard of care in discharging their legal duties, the most exacting known to the law.

12.     But acting under a uniform policy, BNY Mellon abandoned its fiduciary duties and instead advanced its own financial interests, improperly placing the vast majority of the beneficiaries' trust assets into mutual funds, common and collective

trust, hedge funds and other investment vehicles that BNY Mellon managed, issued, or sponsored, or to which it was otherwise financially related.

13.     BNY Mellon's decisions were based on the financial benefit it derived from the investments into which it placed trust assets, rather than whether the investments were in the best interests of the trust beneficiaries.

14.      As it is nearly impossible for trust beneficiaries to terminate or replace a trustee with investment authority or choose the investments the trustee makes without this Court's intervention, Ms. Henderson and proposed Class members are powerless to prevent BNY Mellon's continued financial self-dealing.

## II.   SYNOPSIS OF BNY MELLON'S BREACHES OF FIDUCIARY DUTY WHEN INVESTING TRUST ASSETS

15.     BNY Mellon uniformly directed and invested the trust assets over which it served as trustee in investment vehicles in which it had a direct or indirect financial interest, ranging from proprietary mutual funds to hedge funds sponsored or managed by BNY Mellon or related entities.

16.     BNY Mellon failed to independently determine for each of the trusts in which it served as trustee that these investment decisions were in the best interests of Ms. Henderson and the members of the proposed Class.

17.     BNY Mellon failed to make individualized investment decisions for each of these trusts, instead placing the trust assets into investment vehicles in which it had a financial interest.

18.     BNY Mellon approved these investment vehicles, in whole or in part, because of its own financial interest, not because it had independently determined for the trust that these vehicles were in the best interests of Ms. Henderson and the members of the proposed Class.

19.     BNY Mellon also uniformly failed to continually and regularly evaluate the investments of the trust assets over which it had fiduciary responsibility to determine if those investments remained in the best interests of Ms. Henderson and the members of the proposed Class.

20.     By failing to continually and regularly evaluate those investments, BNY Mellon uniformly failed to change investments or remove assets from investments if they were no longer appropriate and prudent investments for Ms. Henderson and the members of the proposed Class.

21.     The defining characteristic of the investments that BNY Mellon approved, selected and maintained, on behalf of Ms. Henderson and members of the proposed Class, is that BNY Mellon benefitted, placed its self-interest above that of Ms. Henderson and the members of the proposed Class and/or otherwise profited directly and/or indirectly from those investments, through management fees or otherwise.

22.     BNY Mellon's actions breach its fiduciary duty to act with the highest standard of care towards the trusts it oversees and the beneficiaries of those trusts.

23.     Ms. Henderson, acting on her own behalf and that of all others similarly situated, brings this case to prevent and end BNY Mellon's uniform and continuous breach of its fiduciary duties.

III.   PARTIES

A.   PLAINTIFF AND CLASS REPRESENTATIVE

24.   Plaintiff Ashby Henderson ("Plaintiff" or "Ms. Henderson") is a resident of Maryland. Ms. Henderson is an income beneficiary of the Walter H. Wesson Trust (the "Wesson Trust"), a trust created under the laws of Massachusetts that is managed by BNY Mellon in Massachusetts.

25.   BNY Mellon's trust accounting statements for the Wesson Trust represent that BNY Mellon Wealth Management serves as trustee of the Wesson Trust.

26.   According to Defendant BNY Mellon Corp's filing with the Securities and Exchange Commission on Form 10-K for the fiscal year ending December 31, 2013, the Wealth Management business is housed under Defendant BNY Mellon, N.A.

27.   As a trust beneficiary of the Wesson Trust, Ms. Henderson has suffered harm due to the misconduct of BNY Mellon.

B.   DEFENDANTS

28.   Defendant BNY Mellon, National Association ("BNY Mellon, N.A.") is a nationally chartered bank which houses the Wealth Management business for BNY Mellon Corp. BNY Mellon, N.A. is headquartered at 1 Mellon Center, 500 Grant Street, 47th Floor, Pittsburgh, Pennsylvania.

29.   BNY Mellon, N.A.  significant trust operations throughout the United States and has branches, offices, officers and agents throughout the United States. BNY Mellon, N.A. is a wholly owned subsidiary of BNY Mellon Corp., which operates through two principal banks.

30.     BNY Mellon, N.A. is the principal bank that handles Defendant BNY Mellon Corp's Wealth Management business.

31.     Defendant The Bank Of New York Mellon Trust Company, National Association ("BNY Mellon Trust") is a nationally chartered bank which is headquartered at 400 South Hope Street, Los Angeles, California. BNY Mellon Trust is a subsidiary of and handles significant trust operations for BNY Mellon Corp. in the United States.

32.     There are additional subsidiaries and affiliates of BNY Mellon, as well as natural persons, whose identities are presently unknown to Ms. Henderson and who Ms. Henderson is informed and believes participated in the alleged wrongful acts.

IV.     **JURISDICTION AND VENUE**

33.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1711, the Class Action Fairness Act of 2005, and 28 U.S.C. § 1367.

34.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between Ms. Henderson and each of the Defendants.

35.     This Court has personal jurisdiction over Defendants because each of them conducted business in the District of Massachusetts on a regular and continuous basis during the relevant time period.

36.     The Wesson Trust was created under the laws of the Commonwealth of Massachusetts.

37.     Ms. Henderson is a beneficiary of the Wesson Trust.

38.     BNY Mellon serves as the trustee of the Wesson Trust.

39.     The Wesson Trust is managed by BNY Mellon in Massachusetts.

40.     The uniform practices and policies that are at issue in this litigation were formulated and/or developed in this District.

41.     Venue is proper in this District because BNY Mellon does substantial business in this District.

42.     In addition, many witnesses to BNY Mellon's wrongful acts reside or did business within this District.

43.     The District of Massachusetts is the locus of the wrongdoing for Ms. Henderson, who is the income beneficiary of a trust created under the laws of the Commonwealth of Massachusetts and managed in the Commonwealth of Massachusetts.

## V.     APPLICABLE LAW: TRUSTEES OWE THE HIGHEST DUTY OF CARE TO TRUST BENEFICIARIES

44.     Upon acceptance of a trusteeship, a national bank must administer the trust in accordance with applicable law.

45.     BNY Mellon's duties as a professional trustee[1] to the beneficiaries of the trusts it administers include the rigorous duty to invest prudently under the common law Prudent Investor Rule (Restatement of Trusts 3d § 227), and the Uniform Prudent

---

[1] That BNY Mellon, N.A. and BNY Mellon Trust are two entities serving as the singular entity of "trustee" creates the semantically awkward construction of references to "Defendants (plural), serving as trustee (singular)."

Investment Act codified in most of the states, including Massachusetts (M.G.L. c. 203C

§1, et al.).

46.     As a corporate trustee, BNY Mellon, under the Uniform Prudent Investor

Act the common law of trusts (universally applied throughout the United States), and

the federal banking regulations commonly known as Regulation 9 (12 C.F.R. §9), has the

most exacting fiduciary duties known to the law.

47.     The Office of the Comptroller of the Currency ("OCC") has set forth

fundamental guidelines as to the corporate fiduciaries' conduct:

> when selecting a mutual or money market investment, a trustee should
> evaluate the return being paid, the composition and length of maturities
> of its portfolio, the funds management and all other factors relevant to the
> suitability of the investment for the customers.

48.      In the OCC handbook entitled, *Personal Fiduciary Services*, dated August

2002, the OCC stated:

> Consumer protection statutes and regulations may be applied to the
> activities of personal trusts and a national Bank is responsible for ensuring
> that the trust for which it serves as trustee complies with applicable
> consumer protection laws and regulations. Failure to do so can result in a
> bank's breach of the bank's fiduciary responsibilities, beneficiary
> litigation, and financial and reputational damage to the bank.

49.     Federal bank regulators, including the OCC and the Board of Governors

of the Federal Reserve, as well as trust commentators, such as The Law of Trusts (Scott),

have repeatedly clarified that a national bank trustee must have clear internal policies

and procedures regarding investments, and must engage in analysis and assessment of

the appropriateness of investments for individual accounts and of whether those

investments are in the best interests of account beneficiaries.

50.     Violations of laws and regulations may constitute a breach of trust for which the trustee can be held liable.

51.     Under the Uniform Prudent Investor Act, which in turn codifies the investment rules of the common law of trusts, found in Section 90 of the Restatement of Trusts (Third), every trustee has a duty to exercise independent judgment in making investments, and a duty not to act imprudently when selecting investments.

52.     Corporate fiduciaries may not avoid liability for imprudent investing simply by choosing mutual funds as investments.

53.     A trustee must manage and invest the trust assets that the trustee is responsible for as a prudent investor would.

54.     A trustee's investment management decisions relating to assets and courses of action are evaluated in the context of an overall investment strategy.

55.     A trustee must consider such matters as economic conditions, the expected rate of return from an investment, the costs to the trusts and beneficiaries, and the availability of other financial investments to the trustee.

56.     Trust law squarely holds that these duties may be breached in the *complete absence of any fraud* and that one may state a cause of action for a violation of the duty of prudent investing regardless of whether fraud occurs.

**VI.**     **FACTUAL ALLEGATIONS**

**A.**     **BNY MELLON BREACHED ITS FIDUCIARY DUTIES TO THE CLASS**

57.     BNY Mellon is the managing trustee of the Wesson Trust.

58.     BNY Mellon is also the managing trustee for trust accounts of thousands of trusts, with thousands of trust beneficiaries.

59.     BNY Mellon therefore owed a duty to thousands, if not tens of thousands of individuals and entities who are members of the proposed Class.

60.     As a corporate fiduciary, under the Uniform Prudent Investor Act and the common law of trusts applicable in the Commonwealth of Massachusetts and throughout the nation, BNY Mellon has and continues to be held to the highest standard of care with regard to the duty of prudence, in administration of Ms. Henderson's trust and the trusts of those where it serves as managing trustee.

61.     BNY Mellon breached its fiduciary duty to Ms. Henderson and each proposed Class member by: (1) failing to establish investment policies; (2) failing to adopt procedures for periodic review and comparison with other available investment vehicles; (3) failing to establish an arm's-length process for evaluating the prudence of investing trust accounts in financially related investment vehicles rather than in non-affiliated investments; and (4) failing to conduct on-going comparisons of investment vehicles in which BNY Mellon had a financial interest to peer group performances.

62.     In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon has improperly approved financially related investment vehicles, such as proprietary mutual funds and hedge funds sponsored by and/or managed by entities related to BNY Mellon, as appropriate investments for their trust beneficiaries.

63.     Under a uniform policy, BNY Mellon has improperly designated its own

proprietary mutual funds, hedge funds and other investment vehicles as "approved" investments for trust assets that it owes the highest fiduciary duty to manage in the best interests of Ms. Henderson and members of the proposed Class.

64.     BNY Mellon approved investment vehicles for trust assets as acceptable investments because they were financially linked to BNY Mellon, even though these investment vehicles were inferior to non-affiliated investment vehicles.

65.     For example, BNY Mellon approved a number of proprietary mutual funds as appropriate investments that were ranked one or two stars by Morningstar.

66.     Morningstar is a well-respected company that rates mutual funds on a five star ranking system based on their analysis of the quality of those mutual funds.

67.     In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon has improperly invested trust assets it manages into its own financially related investment vehicles, such as proprietary mutual funds and hedge funds sponsored by and/or managed by entities related to BNY Mellon.

68.     Under a uniform policy, BNY Mellon has improperly placed the vast majority of the trust assets of its trust beneficiaries into mutual funds, hedge funds and investment vehicles that are either issued by, managed by, sponsored by or otherwise related to BNY Mellon.

69.     For example, when BNY Mellon used mutual funds as investment vehicles for Ms. Henderson, it invested Ms. Henderson's trust assets almost exclusively in proprietary mutual funds or mutual funds in which BNY Mellon has some financial interest.

70.     BNY Mellon has proprietary mutual funds which are sponsored and/or managed by BNY Mellon, such as the BNY Mellon and Dreyfus family of mutual funds.

71.     Similarly, when BNY Mellon used alternative investments as investment vehicles for Ms. Henderson, it invested Ms. Henderson's trust assets almost exclusively in hedge funds in which BNY Mellon has a financial interest.

72.     BNY Mellon sponsors and/or manages hedge funds, such as the Mellon Optima L/S Strategy FD LLC hedge fund, in which it is financially compensated, such as through management fees.

73.     Beyond mutual funds and hedge funds, there are numerous investment vehicles in which BNY Mellon has a direct or indirect financial interest, such as through management fees or through an ownership interest in the investment vehicle.

74.     BNY Mellon acted imprudently in its investment decisions by choosing to uniformly place trust assets — assets of which it had legal ownership and which it had the power to invest — in its own proprietary or sponsored investment vehicles irrespective of the appropriateness of those investments, even when it was apparent that there were better options for the trust beneficiaries.

75.     Separate from the trust department, BNY Mellon offers brokerage and investment advisory services to investors.

76.     In regard to brokerage and investment advisory services to investors, BNY Mellon offers non-affiliated funds as potential options for investors to select.

77.     BNY Mellon has evaluated and approved non-affiliated funds for its non-trust brokerage clients — who, unlike trust beneficiaries, are investors who have

ultimate control over their investments and can fire BNY Mellon if not satisfied.

78.    BNY Mellon routinely and uniformly favors and directs investment of trust assets into financially related investments, such as proprietary investment funds, even though non-affiliated funds have been evaluated and approved by BNY Mellon for its brokerage and investment advisory service clients.

79.    BNY Mellon routinely and uniformly selected financially related investment funds over non-affiliated mutual funds (or other similar collective investments), regardless of whether these non-affiliated investments are better performing or of lower cost.

80.    In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon did not engage in any analysis or assessment (individualized or otherwise) of what investments were in the best interests of Ms. Henderson and the members of the proposed Class.

81.    Under a uniform policy, BNY Mellon has eliminated the individualized fiduciary services to which all beneficiaries are entitled.

82.    In place of providing individual and appropriate investment services to trust beneficiaries, BNY Mellon has designated its own proprietary mutual funds and other investment vehicles financially related to BNY Mellon as "approved" investments and then driven the monies that it is responsible for managing prudently, as trustee, towards those proprietary mutual funds and related investment vehicles.

83.     In the end, as a matter of uniform policy, BNY Mellon invested assets it was entrusted to manage towards investments that benefited it, rather than investments that were most suited or best for Ms. Henderson and members of the proposed Class.

84.     In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon's investment decisions were influenced, in whole or in part, to favor financially related investments instead of always putting the best interests of Ms. Henderson and members of the proposed Class first, as required by law.

85.     Under a uniform policy, BNY Mellon failed to consider, failed to approve, and/or strongly disfavored non-affiliated investment vehicles.

86.     For those trust assets that are invested in mutual funds, BNY Mellon heavily favors mutual funds that are financially related to it, such as those in which BNY Mellon earns a management fee, even if non-affiliated mutual funds are better performing or cost less.

87.     Similarly, for those trust assets that are invested in hedge funds, BNY Mellon heavily favors hedge funds that are financially related to it over non-affiliated hedge funds.

88.     BNY Mellon knew or should have known by virtue of its position as a large financial services company that better-performing, lower cost, comparable investment funds were available from unaffiliated entities.

89.     In making investment decisions on behalf of those to whom BNY Mellon owes a fiduciary duty, BNY Mellon should have selected investments based on what

was best for the trust and its trust beneficiaries, even if that meant selecting better performing, lower cost, comparable investment funds from unaffiliated entities.

90.     In breach of the Prudent Investor Rule and its fundamental fiduciary duties, BNY Mellon failed to continually review and evaluate the investments in which trust assets were placed to ensure that they remain the best investments for Ms. Henderson and the members of the proposed Class.

91.     Under a uniform policy, BNY Mellon did not require its agents, employees, independent contractors, financial advisors and/or representatives to continually review and evaluate the trust assets that it had a fiduciary duty to manage in the best interests of Ms. Henderson and the members of the proposed Class.

92.     In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon failed to remove trust assets it managed from inferior quality investments or investments that were no longer in the best interests of the trusts and the trust beneficiaries, because those investments were financially related to BNY Mellon.

93.     Under a uniform policy, BNY Mellon's staff was not allowed to and/or was strongly discouraged from removing trust assets from financially related investments, such as proprietary mutual funds, even if they were of inferior quality to non-affiliated investments, performed worse, or had higher costs.

94.     At all relevant times, BNY Mellon knowingly participated in the actions and decisions as generally set forth in this Amended Complaint.

95.     BNY Mellon's conduct, as alleged in this Amended Complaint, was conducted, approved and/or ratified at the highest corporate levels of BNY Mellon, and violated the core duty of a trustee to invest prudently.

96.     BNY Mellon breached its fiduciary duty to Ms. Henderson and each proposed Class member by failing to perform an objective analysis to determine whether these related investment vehicles were optimal investments for the Wesson Trust, or for any other trust account.

97.     BNY Mellon breached its fiduciary duty to Ms. Henderson and each proposed Class member by investing trust assets in financially related investment vehicles that did not have proven investment track records.

98.     In doing so, BNY Mellon spurned non-affiliated investment vehicles with a more established investment track record, superior performance, and lower costs.

99.     BNY Mellon breached its fiduciary duty to Ms. Henderson and each proposed Class member by refusing to divest investments in those financially related investment vehicles, even though they substantially underperformed compared to other available investment vehicles.

100.    Throughout the Class Period, BNY Mellon concealed its wrongdoing by failing to disclose its policies, practices and procedures as discussed below, all of which are in violation of its fiduciary duties. Ms. Henderson neither knew nor suspected the wrongdoing alleged in this Amended Complaint until last year. Regardless, Ms. Henderson could not have discovered such wrongdoing even if she had conducted a reasonable investigation. Ms. Henderson reasonably believed that BNY Mellon made

investment decisions with trust assets with her best interests and the best interests of the members of the proposed Class being the central motivating factor in its investment decision-making.

**B.    BNY MELLON HAS VIOLATED ITS FIDUCIARY DUTIES TO MS. HENDERSON AND THE CLASS**

101.    Ms. Henderson seeks redress for herself and on behalf of tens of thousands of others who are affected by BNY Mellon's breach of fiduciary duties, including the grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts.

102.    In the exercise of its legal ownership of and authority to invest the trust assets, BNY Mellon has invested the trust assets of Ms. Henderson and the Wesson Trust in investment vehicles that profit BNY Mellon, through management fees or other means.

103.    In regard to mutual funds, BNY Mellon invested almost exclusively in proprietary mutual funds that are related to it.

104.    In the case of Ms. Henderson, BNY Mellon invested in funds, such as the BNY Mellon Municipal Opportunities Fund, which are issued by BNY Mellon Funds and managed by BNY Mellon Fund Advisors, both of which are related to BNY Mellon.

105.    BNY Mellon also invested in mutual funds that were linked to it, such as the Dreyfus High Yield Fund, which is managed by The Dreyfus Corporation.

106.    The Dreyfus Corporation merged with Mellon Financial in 1994 and became a subsidiary of BNY Mellon when Mellon Financial and The Bank of New York merged in 2007.

107.    Even ostensibly independent mutual funds that BNY Mellon selected for the trust assets that it managed, were and are linked to BNY Mellon.

108.    For example, a small portion of Ms. Henderson's portfolio is invested with TCW Emerging Markets Income Fund.

109.    TWC Emerging Markets Income Fund is managed by TCW Investment Management Company, a subsidiary of the TCW Group, Inc.

110.    BNY Mellon has had a longstanding contract with TCW since 2001.

111.     Since then, BNY Mellon Asset Servicing has provided support for TCW's entire back- and middle-office investment operations, including trade processing, bank loan processing, investment accounting, partnership accounting, performance, attribution, analytics, financial statements, client billing, and client statements.

112.    On August 9, 2007, BNY Mellon Asset Servicing and TCW announced a renewal of that outsourcing agreement for an additional five years.

113.    At that time, TCW President William Sonneborn stated that "We look forward to continuing our partnership with BNY Mellon Asset Servicing."

114.    In regard to BNY Mellon's investments in mutual funds, none of the choices made by BNY Mellon were untainted by its own pecuniary self-interest.

115.    Even in alternative investments, BNY Mellon invariably and uniformly directed the investment assets of trust beneficiaries to itself.

116.    For Ms. Henderson and the Wesson Trust, a significant portion of Ms. Henderson's alternative investments are in a hedge fund managed by Mellon Hedge Advisors LLC.

117.    Indeed, that hedge fund is amongst the largest single investment in the trust account for which Ms. Henderson is a trust beneficiary.

118.    BNY Mellon's investment decisions on behalf of Ms. Henderson and the Wesson Trust have violated the trustee's duty of care or prudence.

119.    BNY Mellon's uniform investment decisions on behalf of the members of the proposed Class similarly violate the trustee's duty of care or prudence.

### C.    BNY MELLON'S ACTIONS HAVE CAUSED INJURY

120.    BNY Mellon's decisions, in violation of its fiduciary duties, harmed Ms. Henderson and the members of the proposed Class by depriving their trusts of the opportunities to invest in mutual funds, hedge funds, alternative investments, and other collective funds that were recognized as superior in performance, and less risky.

121.    BNY Mellon's decisions, in violation of its fiduciary duties, also deprived Ms. Henderson and the members of the Class of the best services of BNY Mellon, which made investment decisions based on the financial benefit to it, not based on the best interests of the trusts and of the trust beneficiaries, in violation of the trust laws of the Commonwealth of Massachusetts and the United States.

122.    BNY Mellon knew that the decision to invest the trust assets that it managed in its own financially related investment vehicles was imprudent.

123.    BNY Mellon knew that no additional benefit to Ms. Henderson or the proposed Class would result from the investment in these related investment vehicles.

124.    Ms. Henderson and the proposed Class members have been damaged and deprived of better investments and of their right to prudent investment of their trust assets by a trustee.

125.    The uniform policy and practice of BNY Mellon in failing to consider investing the trust assets it managed in non-affiliated investments and instead implementing uniform policies and practices that favored BNY Mellon's financially related investment vehicles came at the expense of Ms. Henderson and the proposed Class.

**D.    ONLY BNY MELLON, AND NOT THE BENEFICIARIES, HAD THE AUTHORITY TO MAKE THE INVESTMENT DECISIONS**

126.    Barring Court intervention, trust beneficiaries, who are part of the proposed Class, have little or no ability to hire or fire the trustee, terminate the trustee's investment authority, or direct the investments that the trustee is duty bound to make. *See, e.g.*, Restatement, Trusts, Section 78 (Duty of loyalty), Comment b.

127.    Ms. Henderson, and other members of the proposed Class, are beneficiaries of trusts in which they lacked the power to make the investment decisions.

128.    Therefore, even if they believed that an investment was imprudent, they were and are powerless to unilaterally change any investment acts of BNY Mellon, unless a Court intervenes.

E.     THIS AMENDED COMPLAINT DOES NOT ALLEGE BNY MELLON ENGAGED IN
MISREPRESENTATIONS, FRAUDULENT OMISSIONS OR FRAUDULENT PRACTICES
THAT ARE MATERIAL TO THE DECISION TO BUY OR SELL "COVERED SECURITIES"

129.     Ms. Henderson and this Amended Complaint do not allege in any fashion

that BNY Mellon engaged in misrepresentations, fraudulent omissions, or fraudulent

practices that are material to the decision by one or more individuals (other than any

alleged fraudster) to buy or sell a "covered security," as defined by 15 U.S.C. §

78bb(f)(5)(E), under the Securities Litigation Uniform Standards Act ("SLUSA").

130.     The claims in this Amended Complaint are entirely based on hornbook

trust law: alleged breaches of the duty of prudent investing.

131.     This is a trust case regarding the failure of BNY Mellon to prudently

invest the funds of Ms. Henderson and the members of the proposed Class.

132.     As such, BNY Mellon's liability turns on whether or not it conformed to

fundamental fiduciary standards of prudence applicable to all corporate trustees in

terms of:

> (1) the investment vehicles that Defendants deemed were "approved" for
> investing trust assets that Defendants oversaw, (2) the investment vehicles that
> Defendants ultimately selected for investing trust assets that Defendants
> oversaw, (3) the failure by Defendants to make individualized decisions for each
> of the trusts that they oversaw, (4) the failure by Defendants to continually
> review and evaluate the investments that the trust assets they oversaw were
> invested in, and (5) the failure by Defendants to remove trust assets from inferior
> quality investments because such inferior quality investments were financially
> linked to Defendants.

133.     The fiduciary standard owed by BNY Mellon to Ms. Henderson and the

proposed members of the Class, include generally accepted practices rules and

regulations established by the Office of the Comptroller of the Currency, the FDIC and the common law on trusts.

134.   The recurring theme of BNY Mellon's conduct, which is a violation of its fiduciary duties, is that BNY Mellon allowed its own financial interest in certain investment vehicles, such as proprietary mutual funds, to influence its decision-making process in regard to investing trust assets, instead of always putting the interests of the trusts and the trust beneficiaries at the forefront, as required by the law.

135.   In *Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1066 (2014), the United States Supreme Court stated that "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to the decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security.'"

136.   In this case, Ms. Henderson and the members of the proposed Class are trust beneficiaries of trusts managed by BNY Mellon.

137.   BNY Mellon, as trustee, not Ms. Henderson and the members of the proposed Class, as trust beneficiaries, have the authority to make investment decisions in regard to the trust assets.

138.   As such, this case is not in regard to fraudulent misrepresentations or omissions that are material to the decision of any individual, other than the fraudster, to buy or sell a "covered security."

139.   Furthermore, the Ninth Circuit has held, in an opinion in a similar case that: "a complaint may allege a violation of a trust administrator's fiduciary duty to a

trust's beneficiaries even where that violation involves trading in covered securities so long as the complaint does not allege, either expressly or implicitly, misrepresentations, omissions, or fraudulent practices coincidental to the violation." *Stoody-Broser v. Bank of America, N.A.*, No. 09-17112, 2011 WL 2181364 (9th Cir. June 6, 2011), at *1.

140.    Ms. Henderson does not allege, expressly or implicitly, any misrepresentations, omissions or fraudulent practices in connection with any "covered securities" that is coincidental to the violation.

    F.    TAX PREPARATION FEE RELATED CLAIMS

141.    At all relevant times BNY Mellon, as the corporate professional trustee of the affected trusts, was in a fiduciary relationship with Ms. Henderson and the members of the proposed Class.

142.    Professional trustees are held to the highest standard of care in discharging their legal duties, including the prudent and honest administration of trusts, the most exacting set of duties known to the law.

143.    As trustee, BNY Mellon had the power and responsibility to administer the trust assets in the best interests of the trust beneficiaries, and not its own interests.

144.    Part of the fundamental duties of a trustee includes making sure that state and federal tax returns are properly prepared and timely filed with national and state tax authorities.

145.    In public statements and in form communications with Ms. Henderson and the class of trust beneficiaries and other actual and potential trust clients, and by holding itself out as a professional trustee, defendant BNY Mellon N.A. and its "Wealth

Management" employees and officers have expressly, impliedly and otherwise represented that BNY Mellon will faithfully and professionally carry out trustee duties and that compensation will be based on fees disclosed to the beneficiaries through trust fee schedules, and periodic trust accountings.

146.    BNY Mellon's repeated public statements have informed Ms. Henderson and the public that it is a "global leader" and a domestic "national leader" in wealth management services and possesses the capability of carrying out "tax preparation."

147.    To illustrate, BNY Mellon's marketing materials generally advise the public that it is committed to providing the highest quality fiduciary and investment management services, touting its position as "trustee for the nation's first trust-that of our founder, Alexander Hamilton."

http://www.bnymellonwealthmanagement.com/Features/FeaturesMain/Recognized _ExpertiseMedia.html.

148.     The trustee BNY Mellon files tax returns for Ms. Henderson's trust, and tens of thousands of personal trusts, including the trust at issue in this litigation, the Wesson Trust.

149.    BNY Mellon, in a further effort to increase its profits at the expense of Ms. Henderson and the proposed Class, has taken millions of dollars from the trusts under the guise of "fiduciary fees" in connection with the mandatory duty filing standard and routine fiduciary tax returns.

150.    The trustee has turned this purported fiduciary tax return preparation fee—a routine activity that in the past was performed for no additional fee—into a

profit center.

151.     Ms. Henderson is informed and believes on that basis that BNY Mellon was aware that predecessor trustees engaged in the same conduct alleged here with regard to BNY Mellon.

152.     BNY Mellon failed to investigate or remedy the illegal conduct on the part of the predecessor trustee, Mellon Bank.

153.     In and of itself, failure to remedy a prior breach gives rise to liability under fundamental trust law.

154.     Further, BNY Mellon's own records show that, like its predecessor(s), BNY Mellon has concealed the fact that the trustee has delegated tax preparation, also known as "high-volume tax work," to the outside accounting firm Price Waterhouse Cooper, which also serves in an auditing capacity for BNY Mellon entities.

155.     BNY Mellon has not advised Ms. Henderson or the proposed Class of the relationship between PWc and BNY Mellon.

156.     Documents produced in this litigation reveal that the trustee sent correspondence to Ms. Henderson and other beneficiaries announcing the preparation of the K-1 for the Wesson Trust.

157.     However, BNY Mellon did not prepare Ms. Henderson's trust's tax returns.

158.     BNY Mellon also does not have a Tax Division charged with the preparation of thousands of tax returns for personal trusts.

159.     BNY Mellon did not advise Ms. Henderson and the Class members that it

had delegated a material part of its trustee duties to another party, i.e., PWc.

160.    BNY Mellon and PWc entered into a long term contract as part of a high volume tax contract with PWc that was intended to generate profits for both PWc and BNY Mellon.

161.    The purported fiduciary fee for tax preparation must be transparent and candid.

162.    A trustee may charge no more than it was charged for preparation of the required returns.

163.    BNY Mellon made additional compensation, and/or "marked up" the cost that PWc charged to prepare the returns, generating additional fee income for BNY Mellon.

164.    The failure to advise Ms. Henderson and Class members that PWc was engaged to prepare the returns was a breach of fiduciary duty and is an ongoing breach of fiduciary duty.

165.    All tax preparation fees must be returned to the Class.

166.    Ms. Henderson will seek injunctive relief at the earliest opportunity that fair discovery is provided.

167.    The preparation of the tax returns and any damages or relief available to Ms. Henderson and the Class for BNY Mellon's failure to disclose the delegation of this duty and its markup of PWc's charges has nothing to do with trust investments and the related claims in this case.

168.     BNY Mellon's decisions, in violation of its fiduciary duties, also deprived Ms. Henderson and the members of the Class of the best services of BNY Mellon, which made the manner of tax preparation decisions based on the financial benefit to it.

169.     In so doing, the trustee unlawfully profited.

170.     In connection with the duty to prepare and file the annual tax returns, the trustee did not act based on the best interests of the trusts and of the trust beneficiaries, in violation of trust law including but not limited to the laws of the Commonwealth of Massachusetts.

171.     BNY Mellon knew that the decision to delegate a material duty to a third party was a matter that had to be brought to the attention of Ms. Henderson and the Class members.

172.     The trustee's delegation of the tax preparation work inured only to the benefit of the trustee, who is obligated to prepare tax returns with no additional compensation, and to PWc which enjoyed the benefits of a contractual relationship with a major bank.

173.     Ms. Henderson and the Class members have been damaged and deprived of the highest level of trustee services and of their right to prudent administration of their trust assets.

174.     The uniform policy and practice of the administration of the trust in this regard favored BNY Mellon financially at the expense of Ms. Henderson and the proposed Class.

175.     As a result of the above-described conduct, BNY Mellon has also acted in violation of the duty of loyalty, and Ms. Henderson and the Class members are entitled to all remedies available under the law.

## VII.   CLASS ACTION ALLEGATIONS

176.     Ms. Henderson brings this action on her own behalf and on behalf of all persons similarly situated, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of two separate Nationwide Classes. The first class, related to the investment claims, is:

> From 1998 to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, (2) for which Defendants had investment discretion or recommendation responsibility over principal and/or income, and (3) which had trust assets invested in investments that were financially affiliated with Defendants. Excluded from the Nationwide Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government.

The second class, related to the preparation of tax returns, is defined as:

> From 1998 to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, and where Defendants charged a "fiduciary" fee for one or more of the covered years, and (2) the paid preparer of the fiduciary return covered by the fee was PriceWaterhouseCoopers (or some other unidentified entity). Excluded from the Nationwide Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government.

177.    **Numerosity**: For both classes, BNY Mellon serves as the trustee for thousands, if not tens of thousands of trusts, each of which may have multiple trustors, grantors, trust beneficiaries, remaindermen, co-trustees and/or successor trustees. BNY Mellon also serves as trustee for trusts throughout the United States. Ms. Henderson does not know the exact number and identities of these purchasers but their identities are presumably known by BNY Mellon. The large number of potential Class members and that fact that they are geographically dispersed makes joinder of all members impracticable.

178.    **Common Questions of Law or Fact:** The questions of law and fact common to proposed Class members predominates over any questions affecting only individual proposed Class members. The questions of law and fact common to the proposed Class members on the investment related claims include, without limitation:

a.    whether the Defendants' corporate policy and practice of designating related investment vehicles, such as proprietary mutual funds and hedge funds sponsored or managed by the Defendants, as appropriate investments for trust beneficiaries, has violated the Defendants' duty of prudent investing;

b.    whether the Defendants' corporate policy and practice of failing to invest trust funds in non-affiliated investment vehicles, such as proprietary mutual funds, hedge funds managed by the Defendants or their related entities, or other collective investments and instead investing trust funds in related investment vehicles has violated the Defendants' duty of prudent investing;

c.    whether the Defendants' refusal to divest its trust accounts from the related investment vehicles that were underperforming was a breach of the Defendants' duty of prudent investing;

d.    whether a declaratory judgment should issue that the Defendants violated their duties as Trustee with respect to the affected trust accounts;

    e.      whether Ms. Henderson and the Class members are entitled to injunctive relief;

    f.      whether Ms. Henderson and the Class members are entitled to restitution, disgorgement, and/or other equitable relief and the measure of such relief; and

    g.      whether Ms. Henderson and the Class members are entitled to compensatory damages according to proof and the measure of such relief.

179.    The questions of law and fact common to proposed Class members predominate over any questions affecting only individual proposed Class members. The questions of law and fact common to the proposed Class members on the tax return preparation claims include, without limitation:

    a.      whether the Defendants' corporate policy and practice of delegating the preparation of tax returns to third parties is lawful;

    b.      whether the Defendants failed to advise the class members in writing of this delegation;

    c.      whether the Defendants unlawfully received compensation as a result of the delegation of the trustee's duty of administering a trust in the interest of the trust accounts and the beneficiaries;

    d.      whether a declaratory judgment should issue that the Defendants violated their duties as Trustee with respect to the affected trust accounts;

    e.      whether Ms. Henderson and the Class members are entitled to injunctive relief;

    f.      whether Ms. Henderson and the Class members are entitled to restitution, disgorgement of fees, and/or other equitable relief and the measure of such relief; and

    g.      whether Ms. Henderson and the Class members are entitled to compensatory damages according to proof and the measure of such relief and punitive damages as allowed by law.

180.    **Typicality:** With regard to the investment related claims, BNY Mellon's breaches of fiduciary duty are uniform to the proposed Class members. BNY Mellon

invested the assets of the Wesson Trust in related investment vehicles, such as the

proprietary BNY Mellon and Dreyfus mutual funds, pursuant to a corporate policy that

affected all trust accounts in a uniform manner and was not made with any individual

account characteristics in mind. BNY Mellon's refusal to divest those related investment

vehicles which performed poorly was also made pursuant to a corporate policy and

affected all trust accounts in a uniform manner. Ms. Henderson's claims are typical of

those the members of the Class. Ms. Henderson's interests are coincident with and not

antagonistic to the members of the Class.

181.    **Typicality — Tax Preparation Related Claims:** BNY Mellon's breaches of

fiduciary duty are uniform to the proposed Class members. BNY Mellon delegated the

preparation of the annual tax returns to a third party without notice to the beneficiaries

and without explaining to the beneficiaries how they will be charged after the

delegation and whether BNY Mellon profited from the delegation. BNY Mellon's

refusal to divest those related investment vehicles which performed poorly was also

made pursuant to a corporate policy and affected all trust accounts in a uniform

manner. Ms. Henderson's claims are typical of those of the members of the Class. Ms.

Henderson's interests are coincident with and not antagonistic to the members of the

Class.

182.    **Fair and Adequate Representation of the Class**: Ms. Henderson's claims

are typical of the claims of the other members of the Class. Ms. Henderson will fairly

and adequately protect the interests of the members of the Class. In addition, Ms.

Henderson is represented by counsel who are highly skilled and experienced in the

prosecution of complex class actions and trust cases. Ms. Henderson and her counsel

are more than capable of fairly and adequately protecting the interests of the Class.

183.    **Superiority of the Class Action Device:** The prosecution of separate

actions by individual members of the Class would create a risk of inconsistent or

varying adjudications. The questions of law and fact common to the members of the

Class predominate over any questions affecting only individual members, including

legal and factual issues relating to liability and damages. A class action is superior to

other available methods for the fair and efficient adjudication of this controversy.

Treatment as a class action will permit a large number of similarly situated persons to

adjudicate their common claims in a single forum simultaneously, efficiently and

without duplication of effort and expense that numerous individual actions would

engender. The Class is readily definable and is one for which records should exist in the

files of BNY Mellon and its co-conspirators, and prosecution as a class action will

eliminate the possibility of repetitious litigation. Class treatment will also permit the

adjudication of relatively small claims by many members of the Class who otherwise

could not afford to litigate an antitrust claim such as the ones asserted in this Amended

Complaint. Ms. Henderson knows of no unusual difficulty that will be encountered in

the management of this action as a class action.

**VIII.   CAUSES OF ACTION**

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty)

184.    Ms. Henderson incorporates and realleges each of the foregoing

paragraphs, as though fully set forth herein and further alleges as follows:

185.    At all relevant times BNY Mellon, as the corporate trustee of the affected

trusts, was in a fiduciary relationship with Ms. Henderson and the members of the

proposed Class.

186.    As trustee, BNY Mellon had the power and responsibility to administer

and invest the trust assets in the best interests of the trust beneficiaries, and no one else.

187.    Conversely, the trust beneficiaries had no control over the investments.

188.    BNY Mellon's duties as a professional trustee to the beneficiaries of the

trusts it administers include the rigorous duty to invest prudently under the common

law Prudent Investor Rule (Restatement of Trusts 3d § 227), and the Uniform Prudent

Investment Act codified in most of the states, including the Massachusetts Prudent

Investor Act (M.G.L. c. 203C § 1, et al.).

189.    BNY Mellon breached its fiduciary duty to Ms. Henderson and the

members of the proposed Class by approving investments for trust assets under its

management because they were financially related to BNY Mellon, such as proprietary

mutual funds and investment vehicles that were sponsored and/or managed by it.

190.    BNY Mellon breached its fiduciary duty to Ms. Henderson and the

members of the proposed Class by directing, placing and investing trust assets under its

management into investments that were financially related to BNY Mellon, such as

proprietary mutual funds and investment vehicles that were sponsored and/or

managed by it.

191.    BNY Mellon breached its fiduciary duty to Ms. Henderson and the

members of the proposed Class by failing to properly administer the trust, including but not limited to making individualized decisions in the best interests of the trusts and trust beneficiaries.

192.    BNY Mellon's continuing policy and acts set out above by which they refuse to consider and/or strongly disfavor non-affiliated investment vehicles or other collective investments for the trusts, while investing trusts in their own inferior investment vehicles in which it had a financial interest, was and is a breach of the BNY Mellon's duty to invest prudently.

193.    BNY Mellon breached its fiduciary duty to Ms. Henderson and the members of the proposed Class by failing to consistently and continually monitor, evaluate and review the investments that trust assets are placed into in order to ensure that those investments remain in the best interests of Ms. Henderson and the members of the proposed Class.

194.    BNY Mellon breached its fiduciary duties to Ms. Henderson and members of the proposed Class by failing to remove trust assets from investment vehicles when those investment vehicles were no longer in the best interests of Ms. Henderson and the members of the proposed Class.

195.    As a proximate result of said breaches of fiduciary duty, Ms. Henderson and every proposed Class member have sustained damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

196.    As a result of the misconduct alleged herein, BNY Mellon unjustly

received a benefit at the expense of Ms. Henderson and members of the proposed Class.

197.    That benefit consists primarily of the management fees and other financial

benefits that BNY Mellon unjustly obtained from the trusts they supposedly had the

highest fiduciary duties to, by investing in investment vehicles, such as proprietary

mutual funds, that BNY Mellon had a vested financial interest in.

198.    BNY Mellon retains financial benefits, such that it would be unjust to

allow it to retain such benefits.

199.    These financial benefits were obtained from its misconduct, and it would

unfair and unjust to allow BNY Mellon to retain them without providing compensation

to Ms. Henderson and the members of the proposed Class.

200.    BNY Mellon acted with conscious disregard of the rights of Ms.

Henderson and the members of the proposed Class.

201.    Ms. Henderson and members of the proposed Class are entitled to

restitution, disgorgement, and/or the imposition of a constructive trust based on all

profits, benefits, and other compensation obtained by BNY Mellon from its misconduct.

## THIRD CAUSE OF ACTION
### (Accounting)

202.    Ms. Henderson and the members of the proposed Class are the

beneficiaries of trusts that are managed by BNY Mellon as a trustee. As such, BNY

Mellon owes Ms. Henderson and the members of the proposed Class a fiduciary duty.

Due to that fiduciary relationship, BNY Mellon owes an obligation to Ms. Henderson and members of the proposed Class with an accounting of its trust accounts.

203.    Accordingly, it is necessary and appropriate for this Court to order an accounting of the trust accounts of Ms. Henderson and members of the proposed Class.

### FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty as to Tax Preparation Claims)**

204.    At all relevant times BNY Mellon, as the corporate trustee of the affected trusts, was in a fiduciary relationship with Ms. Henderson and the members of the proposed Class.

205.    As trustee, BNY Mellon had the power and responsibility to administer the trust assets in the best interests of the trust beneficiaries, and no one else.

206.    Conversely, the trust beneficiaries had no control over the hiring of an accounting firm to prepare thousands of tax returns.

207.    BNY Mellon breached its fiduciary duty to Ms. Henderson and the members of the proposed Class by failing to investigate the actions of the predecessor trustees who engaged in the same conduct alleged here.

208.    BNY Mellon's failure to investigate, advise and act is a breach of fiduciary duty.

209.    Further, by remaining silent, BNY Mellon failed to disclose material facts to Ms. Henderson and the Class, thereby preventing them from discovering or being put on notice of facts giving rise to a breach of fiduciary duty.

210.    BNY Mellon breached its fiduciary duties to Ms. Henderson and the

members of the proposed Class by hiring an accounting firm without notice.

211.    BNY Mellon breached its fiduciary duties to Ms. Henderson and the members of the proposed Class by failing to disclose how much the accounting firm charged and how much the trustee unlawfully marked up the fee.

212.    BNY Mellon breached its fiduciary duty to Ms. Henderson and the members of the proposed Class by failing to properly administer the trust.

213.    BNY Mellon's continuing policy and acts are a breach of its duty of prudent administration and the duty of loyalty.

214.    As a proximate result of the breaches of fiduciary duty, Ms. Henderson and every proposed Class member has sustained damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Accounting as to the Tax Preparation Fees Claim)

215.    Ms. Henderson and the members of the proposed Class are the beneficiaries of trusts that are managed by BNY Mellon as a trustee.

216.    As such, BNY Mellon owes Ms. Henderson and the members of the proposed Class a fiduciary duty.

217.    Due to that fiduciary relationship, BNY Mellon owes an obligation to Ms. Henderson and members of the proposed Class to provide an accounting of their trust accounts as to the tax preparation fees including, but not limited to, disclosure of the contract with PWc, when and why any related tax preparation fees were collected, and

how much the fees that the trustee collected exceeded the money charged to the trustee

by the third party PWc.

218.    Accordingly, it is necessary and appropriate for this Court to order an

accounting of the trust accounts of Ms. Henderson and members of the proposed Class.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Ms. Henderson, on behalf of herself and all others similarly

situated, demands judgment against BNY Mellon, jointly and individually, as follows:

1.    For class certification with Ms. Henderson selected as the representative of the Class and her counsel as Class counsel;

2.    For injunctive relief prohibiting BNY Mellon from continuing to engage in or resuming the unlawful or unfair business practices described in this Complaint;

3.    For compensatory damages in an amount sufficient to fully compensate for all harm caused by BNY Mellon;

4.    For an accounting;

5.    For disgorgement of trustee fees;

6.    For an accounting of each of the Class Trusts;

7.    For restitution for the monies that Defendants unjustly retained from Ms. Henderson and each Class member;

8.    For a constructive trust on the assets of Ms. Henderson and each Class member which BNY Mellon have wrongfully withheld;

9.    For pre-judgment and post-judgment interest at the maximum rate allowable by law;

10.    For appointment of a guardian ad litem, or Trust Protector, where appropriate with the power to choose another Trustee;

11.    For costs of suit, including reasonable attorneys' and experts' fees; and

12.    For such other and further relief, including punitive damages as the Court may find just and proper.

**DEMAND FOR JURY TRIAL**

On behalf of herself and the Class, Ms. Henderson hereby requests trial by jury as to all issues so triable.

Dated: March 3, 2016

/s/ John Roddy
John Roddy, BBO # 424240
jroddy@baileyglasser.com
Elizabeth Ryan, BBO #549632
eryan@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
**BAILEY & GLASSER LLP**
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

Derek G. Howard (admitted *pro hac vice*)
derek@dhowlaw.com
**HOWARD LAW FIRM**
42 Miller Avenue
Mill Valley, California 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

J. Brian McTigue (admitted *pro hac vice*)
bmtigue@mctiguelaw.com
Regina M. Markey (admitted *pro hac vice*)
rmarkey@mctiguelaw.com
**McTigue Law LLP**
4530 Wisconsin Avenue, NW, Suite 300
Washington D.C. 20016
Telephone: (202) 364-6900
Facsimile: (202) 364-9960

Jack W. Lee (admitted *pro hac vice*)
jlee@minamitamaki.com
Aron K. Liang (admitted *pro hac vice*)
aliang@minamitamaki.com
**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone: (415) 788-9000
Facsimile: (415) 398-3887

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on March 3, 2016.

/s/ John Roddy
John Roddy