# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ASHBY HENDERSON** and **THOMAS HERSHENSON**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>**BANK OF NEW YORK MELLON, NATIONAL ASSOCIATION;**<br><br>**and**<br><br>**BANK OF NEW YORK MELLON CORPORATION,**<br><br>Defendants. | Case No. 1:15-cv-10599-PBS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**LEAVE GRANTED November 16, 2016**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

1.     This case arises from multiple breaches of fiduciary duties owed to trust beneficiaries by Defendants Bank of New York Mellon, National Association ("BNY Mellon, N.A."), and the Bank of New York Mellon Corporation ("BNY Mellon Corp.") (collectively "Defendants" or "BNY Mellon").

2.     Under this complaint, and after discovery, Plaintiffs allege two breaches of fiduciary duty: (1) imprudent investing of trust assets; and (2) the taking of improper, unauthorized fees, including fees for the preparation of fiduciary returns ("the tax preparation fees").

3.     The original Complaint set forth a set of claims related to BNY Mellon, N.A.'s investment of trust assets. BNY Mellon, N.A. is the trustee of the trust accounts at issue. BNY Mellon Corp. is the bank holding company.

4.      The investment claims were the subject of a November 23, 2015 Order (Dkt. No. 72), denying Defendants' Motion to Dismiss the entire case.

5.      In this pleading, Ms. Henderson makes no substantive changes to any aspects of those investment-related claims that were the subject of the November 23, 2015 Order.

6.      Any changes to the language of those investment-related class claims are stylistic only.

7.      The First Amended Complaint ("FAC") was filed on March 3, 2016. Dkt. No. 97.

8.      The FAC added a new claim for the undisclosed delegation of tax preparation duties to PricewaterhouseCoopers LLP ("PwC") and Defendants' markup of PwC's tax preparation fees charged to Defendants. This claim is referred to as the "tax preparation claim."

9.      PwC prepares tax returns, also referred to as "K-1s" or "Fiduciary Returns."

10.     On or about December 23, 2015, Defendants filed an Answer to Plaintiff Ashby Henderson's FAC. Dkt. No. 84.

11.     This Second Amended Complaint supplements the FAC with additional facts regarding tax preparation claims pled in the FAC.

12.     Subsequent to the filing of Ms. Henderson's FAC, Plaintiff served a document subpoena on PwC.

13.     As part of discovery, PwC produced three contracts which memorialized that PwC has been preparing fiduciary returns for Plaintiffs' and class members' trusts.

14.     In May 2016, Plaintiffs' counsel took the deposition of Dennis Murray, the "Wealth Manager" for Plaintiff Henderson's trust ("The Wesson Trust").

15.     Dennis Murray is the person responsible for Plaintiff Henderson's trust.

16.     Mr. Murray testified that BNY Mellon, N.A. charges trusts more than it pays PwC to prepare the trust tax returns.

17.     This written and deposition discovery more generally confirms BNY Mellon, N.A.'s undisclosed markup of PwC's tax preparation charges.

18.     Discovery has revealed that Mellon Financial Corporation and Defendant BNY Mellon Corp., the holding company, were the signatories on a series of at least three tax preparation-related engagements with PwC.

19.     Because of the discovery that BNY Mellon Corp. signed a contract with PwC to prepare fiduciary returns, this pleading seeks to return BNY Mellon Corp. as Defendant in this case, but _only_ with regard to the tax preparation allegations.

20.     This Amended Complaint also adds a new Plaintiff, Thomas Hershenson, a beneficiary of the T/D of Morris A. Hershenson Trust f/b/o Lee M. Hershenson, _et al._, alleging unlawful tax preparation fees.

21.     Mr. Hershenson does not seek any class-related damages for any aspect of the investment-related claims and does not seek to be a class representative with regard to those allegations.

22.     Like Ms. Henderson's trust, Mr. Hershenson's trust was charged the tax preparation fees that are the subject of the class allegations, and he seeks to be appointed as a class representative for those tax preparation claims.

**Failure to Account**

23.     BNY Mellon, N.A., failed to provide a proper accounting to the trust beneficiaries of the amounts improperly taken as tax preparation fees and services.

24.     The failure to provide a proper accounting is a breach of trust.

25.     These breaches include, without limitation: (1) the failure to fully disclose such fees on any account statements that BNY Mellon, N.A., provided to trust beneficiaries; (2) the delegation of tax preparation by BNY Mellon, N.A., to a third-party accounting firm; and (3) the actual fees (including any mark-up) charged by the trustee as required by trust law.

26.     As such, BNY Mellon, N.A., must return to the affected beneficiaries all tax preparation fees at issue.

**Summary of Investment-Related Claims**

27.     BNY Mellon, N.A., is also liable for the investment related claims raised in the original complaint and which the November 23, 2015 Order denying BNY Mellon, N.A.'s motion to dismiss addressed.

28.     BNY Mellon, N.A., has answered these allegations. Dkt. Nos. 84, 105.

29.     In summary, acting under a uniform policy, BNY Mellon, N.A., abandoned its fiduciary duties and instead advanced its own financial interests, improperly placing the vast majority of the beneficiaries' trust assets into a preselected

set of mutual funds, hedge funds, commodity funds and other investment vehicles that BNY Mellon, N.A., managed, issued, or sponsored, or to which it was otherwise financially related.

30.    BNY Mellon, N.A.'s preselected list of approved, and affiliated, trust investments did not include the full range of non-affiliated investment options available to BNY non-trust investors, who are able to make their own investment choices.

31.    BNY Mellon, N.A.'s trust investment decisions were not based on independent assessments of what investments were in the best interests of the trust beneficiaries of each trust.

32.    Instead, investment decisions were made for the trusts as a collective group and were based on the financial benefit it derived from the investments into which it placed trust assets.

**Certification of Two Classes Requested**

33.    Plaintiffs seek certification of two nationwide classes.

34.    The first is the Proprietary and Affiliated Investment Vehicle Class, whose trust assets Defendants invested in proprietary or financially affiliated vehicles.

35.    The second class is the Unlawful Fees Class, who Defendants charged more for preparation of tax returns than PricewaterhouseCoopers charged Defendants. The formal class definitions are set forth in detail in paragraph 243, below.

36.    As it is nearly impossible for trust beneficiaries to terminate or replace a trustee with investment authority or choose the investments the trustee makes without this Court's intervention, members of the proposed Proprietary and Affiliated

Investment Vehicle Class are powerless to prevent BNY Mellon, N.A.'s continued financial self-dealing without this Court's intervention.

37.     It is also nearly impossible for trust beneficiaries to discover BNY Mellon, N.A.'s markup of their tax preparation fees, because they are unaware that such a fee is unlawful. So members of the Unlawful Fees Class have virtually no chance of preventing the continued taking of this hidden profit without this Court's intervention.

## II.     PARTIES

### A.     PLAINTIFFS AND CLASS REPRESENTATIVES

38.     Plaintiff Ashby Henderson is a resident of Maryland. Plaintiff is an income beneficiary of the Walter H. Wesson Trust (the "Wesson Trust"), a trust created under the laws of Massachusetts.

39.     The Wesson trust is administered and managed by BNY Mellon, N.A., in Boston, Massachusetts.

40.     The trust accounting statements for the Wesson Trust represent that BNY Mellon Wealth Management serves as trustee of the Wesson Trust.

41.     According to Defendant BNY Mellon Corp.'s filing with the Securities and Exchange Commission on Form 10-K for the fiscal year ending December 31, 2015, the Wealth Management business is housed under Defendant BNY Mellon, N.A.

42.     As a trust beneficiary of the Wesson Trust, Plaintiff Ashby Henderson has suffered harm due to the conduct of Defendants.

43.     Plaintiff Thomas Hershenson is a resident of Washington D.C.

44.     The Hershenson Trust is a trust beneficiary of the irrevocable trust entitled in the trustee's records as the T/D of Morris A. Hershenson Trust f/b/o Lee M. Hershenson, *et al.* (described herein as the "Hershenson Trust"), a trust created by will under the laws of Pennsylvania.

45.     This trust was later amended.

46.     Mr. Hershenson is a beneficiary of the Hershenson Trust.

47.     As discussed, Plaintiff Hershenson **does not** allege or seek any class action related claims with regard to the investment-related class allegation claims concerning the trustee's selection of proprietary funds. Hershenson's individual, non-class investment claims are the subject of a separate action.

48.     The trust accounting statements for the Hershenson Trust represent that BNY Mellon Wealth Management serves as trustee of the Hershenson Trust. As a trust beneficiary of the Hershenson Trust, Thomas Hershenson has suffered harm due to the conduct of Defendants.

### B.     DEFENDANTS

49.     Defendant Bank of New York Mellon, National Association ("BNY Mellon, N.A.") is a nationally chartered bank which houses the Wealth Management business for BNY Mellon Corp. BNY Mellon, N.A. is headquartered at 1 Mellon Center, 500 Grant Street, 47th Floor, Pittsburgh, Pennsylvania.

50.     According to BNY Mellon Corp.'s filing with the Securities and Exchange Commission on Form 10-K for the fiscal year ending December 31, 2015, the Wealth Management business is housed under BNY Mellon, N.A.

51.     BNY Mellon, N.A., conducts significant trust operations throughout the United States and has branches, offices, officers and agents throughout the United States. In the answer that BNY Mellon, N.A., filed in this case, it admits that it has been the trustee of the Wesson Trust.

52.     BNY Mellon, N.A., is a wholly owned subsidiary of BNY Mellon Corp., which operates through two principal banks.

53.     BNY Mellon, N.A., is the principal bank that handles Defendant BNY Mellon Corp.'s Wealth Management business.

54.     There are additional subsidiaries and affiliates of BNY Mellon Corp., as well as natural persons, whose identities are presently unknown to Plaintiffs and who Plaintiffs are informed and believe participated in the alleged wrongful acts.

55.     Defendant BNY Mellon Corp. is registered as a Bank Holding Company under the Bank Holding Company Act of 1956.

56.     As a Bank Holding Company, BNY Mellon Corp. engages in broader activities than a typical financial holding company.

57.     These activities include banking, managing or controlling banks, performing certain servicing activities for subsidiaries, and engaging in activities incidental to banking.

58.     BNY Mellon Corp. operates through two principal national bank subsidiaries, BNY Mellon, N.A., and BNY Mellon Trust, which are indirect, wholly owned subsidiaries of BNY Mellon Corp.

59.     BNY Mellon Trust does not actively manage or administer personal trusts.

60.     BNY Mellon Corp.'s own description of BNY Wealth Management is that it provides services as trustee of personal trusts through BNYM Wealth Management.

61.     Defendant BNY Mellon Corp. markets itself using that description and similarly manages trusts under that name.

62.     Documents provided during discovery show that BNY Mellon Corp. was directly involved in trust management decisions including the Defendants' high level decision to sign a contract with PwC for the delegation and preparation of fiduciary returns.

63.     Specifically, the tax preparation fee claims alleged herein arise from a series of three agreements between BNY Mellon Corp. and PwC.

64.     The first agreement establishes that, prior to its relationship with BNY Mellon Corp., PwC contracted with BNY Mellon Corp.'s pre-merger predecessor, Mellon Financial Corporation, to perform the same work.

65.     Thus, there is a history of the BNY Mellon Corp. parent company having direct involvement with its subsidiary's trust administration and management.

## III.     JURISDICTION AND VENUE

66.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1711, the Class Action Fairness Act of 2005, and 28 U.S.C. § 1367.

67.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between Plaintiffs and each of the Defendants.

68.     This Court has personal jurisdiction over Defendants because each conducted business in the District of Massachusetts on a regular and continuous basis during the relevant time period.

69.     The Wesson Trust was created under the laws of the Commonwealth of Massachusetts.

70.     Plaintiff Ashby Henderson is a beneficiary of the Wesson Trust.

71.     BNY Mellon, N.A., serves as the trustee of the Wesson Trust.

72.     The Wesson Trust is administered and managed by BNY Mellon, N.A., in Massachusetts.

73.     The District of Massachusetts is the locus of the wrongdoing for the income beneficiaries of the Wesson Trust, which was created under the laws of the Commonwealth of Massachusetts.

74.     The uniform practices and policies that are at issue in this litigation were formulated and/or developed in this District.

75.     Tax preparation work for Plaintiff Hershenson's trust was at one time performed in Boston.

76.     Venue is proper in this District because BNY Mellon, N.A., does substantial business in this District.

77.     In addition, many witnesses to BNY Mellon, N.A.'s wrongful acts reside or did business within this District.

## IV.   APPLICABLE LAW: TRUSTEES OWE THE HIGHEST DUTY OF CARE TO TRUST BENEFICIARIES

78.     Upon acceptance of a trusteeship, a national bank must administer the trust in accordance with applicable law.

### A.   INVESTMENT DUTIES AND THE PRUDENT INVESTOR RULE

79.     BNY Mellon, N.A.'s, duties as a professional trustee to the beneficiaries of its trusts include the rigorous duty to invest prudently under the common law Prudent Investor Rule (Restatement of Trusts (Third) § 227), and the Uniform Prudent Investment Act ("UPIA") codified in most of the states, including Massachusetts (M.G.L. c. 203C, § 1, *et seq.*).

80.     M.G.L. c. 203C, § 6, as well as section 5 of the UPIA, state that "[a] trustee shall invest and manage the trust assets solely in the interest of the beneficiaries."

81.     The law mandates this duty of loyalty where all investment decisions are vested in the trustee. The legal counterpoint to the trustee's authority is the trustee's obligation to act solely in the best interests of the beneficiary, to whom all of the trust's benefits belong. *See, e.g., Rutanen v. Ballard*, 424 Mass. 723, 731, 678 N.E.2d 133, 139-140 (1997); *Boston Safe Deposit & Trust Co. v. Lewis*, 317 Mass. 137, 140, 57 N.E.2d 638, 640 (1944) ("A trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust. He must lay aside self-interest when it becomes adverse to the *cestui que* trust, for the office of trustee cannot be subverted to fostering the personal advantage or individual gain of the incumbent.").

82.     As a corporate trustee, BNY Mellon, N.A., under the UPIA, the common law of trusts (universally applied throughout the United States), and federal banking regulations commonly known as Regulation 9 (12 C.F.R. § 9), has the most exacting fiduciary duties known to the law.

83.     The Office of the Comptroller of the Currency ("OCC") has set forth fundamental guidelines as to the corporate fiduciaries' conduct:

> when selecting a mutual or money market investment, a trustee should evaluate the return being paid, the composition and length of maturities of its portfolio, the funds management and all other factors relevant to the suitability of the investment for the customers.

84.     Federal bank regulators, including the OCC and the Federal Reserve, as well as trust commentators, such as *The Law of Trusts* (Scott), have repeatedly clarified that a national bank trustee must have clear internal policies and procedures regarding investments, and must engage in analysis and assessment of the appropriateness of investments for individual accounts and whether those investments are in the best interests of account beneficiaries.

85.     Violations of laws and regulations may constitute a breach of trust for which the trustee can be held liable.

86.     Under the UPIA, which in turn codifies the investment rules of the common law of trusts, found in Section 90 of the Restatement of Trusts (Third), every trustee has a duty to exercise independent judgment in making investments, and a duty not to act imprudently when selecting investments.

87.     Corporate fiduciaries may not avoid liability for imprudent investing simply by choosing mutual funds as investments.

88.     A trustee must manage and invest the trust assets for which the trustee is responsible as a prudent investor would.

89.     A trustee's investment management decisions relating to assets and courses of action are evaluated in the context of an overall investment strategy.

90.     A trustee must consider such matters as economic conditions, the expected rate of return from an investment, the costs to the trusts and beneficiaries, and the availability of other financial investments to the trustee.

91.     Trust law squarely holds that these duties may be breached in the *complete absence of any fraud* and that one may state a cause of action for a violation of the duty of prudent investing regardless of whether fraud occurs.

B.     TRUSTEES MAY ONLY BE REIMBURSED FOR PROPERLY INCURRED AND AUTHORIZED FEES

92.     BNY Mellon, N.A., as a professional trustee, is required to administer trusts solely in the interests of the beneficiaries, under the common-law Duty of Loyalty (*see* UTC § 802), codified in most states, including Massachusetts (M.G.L. c. 203E, § 802).

93.     A trustee who has special skills or expertise—such as BNY Mellon, N.A., which represents itself to be a corporate trustee and professional investment manager—has the highest fiduciary duty under trust law.

94.     BNY Mellon, N.A., has a duty to use such special skills or expertise as established by the UTC § 806; the UPIA §2(f); the Restatement (Second) of Trusts § 174

(1959); and the common law, codified in most states, including Massachusetts (M.G.L. c. 203C, § 3, 203E § 806).

95.    In administering a trust, the trustee may only incur costs that are appropriate and reasonable in relation to the trust property, the purposes of the trust and the skills of the trustee, under the common-law Costs of Administration (*see* UTC § 805), codified in most states, including Massachusetts (M.G.L. c. 203E, § 805). This has long been the law of trusts. *See* Restatement of Trusts (Second) § 188 (1959).

96.    In administering a trust, at the very least, a corporate fiduciary has a common-law Duty to Inform and Report, codified in most states, including Massachusetts (M.G.L. c. 203, § 813), requiring it to inform and report to the beneficiaries on the administration of the trust and of the material facts necessary for them to protect their interests.

97.    In setting a trustee's compensation, the services actually performed and responsibilities assumed by the trustee should be closely examined.

98.    A downward adjustment of fees may be appropriate if a trustee has delegated significant duties to agents, such as the delegation of tax preparation duties.

99.    A national bank's failure to comply with these trustee obligations is a breach of the trustee's fiduciary obligations, harming the bank both economically and reputationally. In the OCC handbook entitled, *Personal Fiduciary Services*, dated August 2002, the OCC stated:

> Consumer protection statutes and regulations may be applied to the
> activities of personal trusts and a national Bank is responsible for ensuring
> that the trust for which it serves as trustee complies with applicable

consumer protection laws and regulations. Failure to do so can result in a bank's breach of the bank's fiduciary responsibilities, beneficiary litigation, and financial and reputational damage to the bank.

## V.   FACTUAL ALLEGATIONS: BNY MELLON, N.A., BREACHED FIDUCIARY DUTIES OWED TO THE CLASSES

100.   BNY Mellon, N.A., is the corporate trustee that manages the Wesson Trust, and the Hershenson Trust.

101.   BNY Mellon, N.A., also administers trust accounts of thousands of trusts, with tens of thousands of related trust beneficiaries.

102.   BNY Mellon, N.A., therefore owed fiduciary duties to thousands, if not tens of thousands of individuals and entities who are members of the proposed Classes.

103.   BNY Mellon, N.A., breached its fiduciary duties to Plaintiffs and proposed Class members by: (1) failing to establish investment policies consistent with its fiduciary duties; (2) failing to adopt procedures for periodic review and comparison with other available investment vehicles; (3) failing to establish an arm's-length process for evaluating the prudence of investing trust accounts in financially related investment vehicles rather than in non-affiliated investments; (4) failing to conduct on-going comparisons of investment vehicles in which BNY Mellon, N.A., or its affiliates, had a financial interest to peer group performances; and (5) imposing undisclosed, illegal and inflated fees upon beneficiaries.

## VI.   BNY MELLON'S BREACHES AS TO THE PROPRIETARY AND AFFILIATED INVESTMENT VEHICLE CLASS

### A.   INVESTMENT OF TRUST ASSETS IN PROPRIETARY AND AFFILIATED INVESTMENT VEHICLES

104.   In breach of the Prudent Investor Rule and its fundamental duties as

fiduciary, BNY Mellon, N.A., has imprudently approved financially related investment vehicles, such as proprietary mutual funds and hedge funds sponsored by and/or managed by entities related to BNY Mellon, N.A., as appropriate investments for their trust beneficiaries.

105.     Under a uniform policy, BNY Mellon, N.A., has designated its own proprietary mutual funds, hedge funds and other investment vehicles as "approved" investments for trust assets that it owes the highest fiduciary duty to manage in the best interests of the Wesson Trust and members of the proposed Proprietary and Affiliated Investment Vehicle Class.

106.     BNY Mellon, N.A., approved investment vehicles for trust assets as acceptable investments because they were financially linked to BNY Mellon, N.A., even though these investment vehicles were inferior to non-affiliated investment vehicles.

107.     For example, BNY Mellon, N.A., approved a number of proprietary mutual funds as appropriate investments that were ranked one or two stars by Morningstar.

108.     Morningstar is a well-respected company that rates mutual funds on a five-star ranking system based on their analysis of the quality of those mutual funds.

109.     In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon, N.A., has improperly invested trust assets it manages into its own financially related investment vehicles, such as proprietary mutual funds and hedge funds sponsored and/or managed by entities related to BNY Mellon, N.A., including Optima.

110.    Under a uniform policy, BNY Mellon, N.A., has improperly placed the vast majority of the trust assets of its trust beneficiaries into mutual funds, hedge funds and investment vehicles that are either issued, managed or, sponsored by, or otherwise related to BNY Mellon.

111.    For example, when BNY Mellon, N.A., used mutual funds as investment vehicles for the Wesson Trust, it invested the trust assets almost exclusively in proprietary mutual funds or mutual funds in which BNY Mellon, N.A., has some financial interest.

112.    BNY Mellon  has proprietary mutual funds which are sponsored and/or managed by BNY Mellon, such as the BNY Mellon and Dreyfus family of mutual funds.

113.    Similarly, when BNY Mellon, N.A., used alternative investments as investment vehicles for the Wesson Trust, it invested trust assets almost exclusively in hedge funds in which BNY Mellon has  a financial interest.

114.    BNY Mellon sponsors and/or manages hedge funds, such as the Mellon Optima L/S Strategy FD LLC hedge fund, in which it is financially compensated, such as through management fees.

115.    Beyond mutual funds and hedge funds, there are numerous investment vehicles in which BNY Mellon has a direct or indirect financial interest, such as through management fees or through an ownership interest in the investment vehicle.

116.    BNY Mellon, N.A., acted imprudently in its investment decisions by choosing to uniformly place trust assets — assets of which it had legal ownership and in which it had the power to invest — in its own proprietary or sponsored investment

vehicles irrespective of the appropriateness of those investments, even when it was apparent that there were better options for the trust beneficiaries.

### 1. BNY MELLON, N.A., OFFERS NON-PROPRIETARY VEHICLES TO NON-TRUST CLIENTS

117. Separate from the trust department, BNY Mellon, N.A., offers a variety of "wealth management" services, including but not limited to brokerage and investment advisory services to what it calls "Private Client" investors.

118. In regard to brokerage and investment advisory services to investors, BNY Mellon, N.A., does not offer or otherwise invest assets in the same manner as those who are captive personal trust beneficiaries.

119. Rather, BNY Mellon, N.A., offers non-affiliated funds as options for those investors to select.

120. BNY Mellon, N.A., has evaluated and approved non-affiliated funds for its non-trust clients — who, unlike trust beneficiaries, are investors who have ultimate control over their investments and can fire BNY Mellon, N.A., if not satisfied.

121. BNY Mellon, N.A., routinely and uniformly favors and directs investment of trust assets into financially related investments, such as proprietary investment funds, even though non-affiliated funds have been evaluated and approved by BNY Mellon, N.A., for its brokerage and investment advisory service clients.

122. BNY Mellon, N.A., routinely and uniformly selected financially related investment funds over non-affiliated mutual funds (or other similar collective

investments), regardless of whether these non-affiliated investments were better

performing or of lower overall cost.

> **2.    BNY MELLON, N.A., LIMITS TRUSTS TO "APPROVED LISTS" OF INVESTMENTS, HEAVILY WEIGHTED TOWARDS PROPRIETARY AND AFFILIATED VEHICLES**

123.    In breach of the Prudent Investor Rule and its fundamental duties as

fiduciary, BNY Mellon, N.A., did not engage in any analysis or assessment

(individualized or otherwise) of what investments were in the best interests of Plaintiff

Henderson and the members of the proposed Class.

124.    Under a uniform policy, BNY Mellon, N.A., has disregarded the

individualized fiduciary services to which all beneficiaries are entitled.

125.    In place of providing individual and appropriate investment services to

trust beneficiaries, BNY Mellon, N.A., has designated its own proprietary mutual funds

and other investment vehicles financially related to BNY Mellon, N.A., as "approved"

investments.

126.    Defendants have driven the monies that it is responsible for managing

prudently, as trustee, towards those proprietary mutual funds and related investment

vehicles.

127.    BNY Mellon, N.A., staff regularly developed lists of already-approved

affiliated funds in which collective groups of trusts would be placed.

128.    These lists and options are provided to the "Wealth Managers" and are

labeled "For Internal Use Only."

129.    This collectivization of trust administration and of the investment of trust assets was intended to, and did, lower costs for the trustee, without an attendant reduction in fees for the trusts.

130.    The "Wealth Manger" for the Wesson Trust undertakes no due diligence as a normal course on any of the investments that he places into trusts.

131.    Mr. Murray did not conduct any due diligence when placing affiliated mutual funds into the Wesson Trust.

132.    The Wealth Mangers invest according to these internal lists.

133.    BNY Mellon, N.A., provides no investment management for individual trusts aside from the determination of general investment objectives and use of the available affiliated funds within the internal lists.

134.     BNY Mellon, N.A., categorizes and manages the trusts for administration and investment purposes *as large, collective groups, not as individual trusts.*

135.    The Wealth Manager for the Wesson Trust does now know what the OCC requires in terms of documenting the reasons for making investments for individual trusts.

136.    The Wealth Manager for the Wesson Trust is not allowed to deviate from the approved investment lists which make mandatory the decision to only select from affiliated investments.

137.    The Wealth Manager for the Wesson Trust has made no effort to determine whether or not he or his employer have a conflict of interest in choosing only affiliated investments.

138.     The Wealth Manager for the Wesson Trust does not recall ever documenting in the Wesson Trust file, the reasons why he invested certain affiliated assets into the Wesson Trust.

139.     In the end, as a matter of uniform policy, BNY Mellon, N.A., invests assets it was entrusted to manage in investment vehicles that benefited it, rather than investments that were most suited or best for Plaintiff Henderson and members of the proposed Class.

140.     In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon, N.A.'s investment decisions were influenced, in whole or in part, to favor financially related investments instead of always putting the best interests of Plaintiff Henderson and members of the proposed Class first, as required by law.

141.     Under a uniform policy, BNY Mellon, N.A., failed to consider, failed to approve, and/or strongly disfavored non-affiliated investment vehicles.

142.     To illustrate, for those trust assets that are invested in mutual funds, BNY Mellon, N.A., heavily favors mutual funds that are financially related to it, such as the BNY Mellon and Dreyfus family of mutual funds, and others like those in which BNY Mellon earns a management fee.

143.     This occurs even if non-affiliated mutual funds are better performing or cost less.

144.     Similarly, for those trust assets that are invested in hedge funds, BNY Mellon, N.A., heavily favors hedge funds that are financially related to it over non-affiliated hedge funds.

145.    When BNY Mellon, N.A., used "alternative investments," such as hedge

funds, as funds for the Wesson Trust, it invested almost exclusively in Affiliated Hedge

Fund I and later Mellon Optima Long/Short Strategy Fund, LLC, hedge funds in which

BNY Mellon, N.A., had a financial interest.

### 3.    BNY Mellon, N.A., Administered Trusts In Production Line Fashion And Did Not Tailor Trust Portfolios To Particular Trust Fund Needs

146.    Defendants knew by virtue of their position as a large financial services

company and managers for high net worth individuals and families that better-

performing, lower cost, comparable investment funds were available from unaffiliated

entities.

147.    In making investment decisions on behalf of those to whom BNY Mellon,

N.A., owes a fiduciary duty, BNY Mellon, N.A., should have selected investments

based on what was best for the trust and its trust beneficiaries, even if that meant

selecting better performing, lower cost, comparable investment funds from unaffiliated

entities.

148.    In breach of the Prudent Investor Rule and its fundamental fiduciary

duties, BNY Mellon, N.A., failed to continually review and evaluate the investments in

which trust assets were placed to ensure that they remain the best investments for

Plaintiff Henderson and the members of the proposed Class.

149.    The Wealth Manager for the Wesson Trust did not perform such review

himself.

150.    Under a uniform policy, BNY Mellon, N.A., did not require its agents, employees, independent contractors, financial advisors and/or representatives to continually review and evaluate the trust assets that were affiliated investments.

151.    BNY Mellon, N.A., has had a fiduciary duty to manage in the best interests of Plaintiff Henderson and the members of the proposed Class.

152.    In breach of the Prudent Investor Rule and its fundamental duties as fiduciary, BNY Mellon, N.A., failed to remove trust assets it managed from inferior quality investments or investments that were no longer in the best interests of the trusts and the trust beneficiaries, because those investments were financially related to BNY Mellon, N.A.

153.    Under a uniform policy, BNY Mellon, N.A.'s staff was expressly forbidden to and/or was strongly discouraged from removing trust assets from financially related investments, such as proprietary mutual funds, even if they were of inferior quality to non-affiliated investments, performed worse, or had higher costs.

154.    At all relevant times, BNY Mellon, N.A., knowingly participated in the actions and decisions as generally set forth in this Second Amended Complaint.

155.    BNY Mellon's conduct, as alleged in this Second Amended Complaint, was conducted, approved and/or ratified at the highest corporate levels of both Defendants, and violated the core duty of a trustee to invest prudently.

156.    BNY Mellon, N.A., breached its fiduciary duty to the Wesson Trust beneficiaries and each proposed Class member by failing to perform an objective

analysis to determine whether these related investment vehicles were optimal investments for the Wesson Trust, or for any other trust account.

157.    The Wealth Manager for the Wesson Trust has not performed an objective analysis to determine whether these related investment vehicles were optimal investments for the Wesson Trust, or for any other trust account.

158.    BNY Mellon, N.A., breached its fiduciary duty to Plaintiff Henderson and each proposed Class member by investing trust assets in financially related investment vehicles that did not have proven investment track records.

159.    In doing so, BNY Mellon, N.A., spurned non-affiliated investment vehicles with a more established investment track record, superior performance, and lower costs.

160.    BNY Mellon, N.A., breached its fiduciary duty to Plaintiff Henderson and each proposed Class member by refusing to divest investments in those financially related investment vehicles, even though they underperformed compared to other available investment vehicles.

161.    Plaintiff Henderson neither knew nor suspected the wrongdoing alleged in this Second Amended Complaint prior to the retention of counsel and/or the filing of an action.

162.    Neither Plaintiff Henderson nor the Class could have discovered such breaches of trust even had they conducted an investigation.

163.    Plaintiff Henderson reasonably believed that BNY Mellon, N.A., made investment decisions with trust assets with only their best interests and the best

interests of the members of the proposed Class being the central motivating factor in its investment decision-making.

### 4. EXAMPLES OF BNY MELLON, N.A.'S IMPROPER INVESTMENTS IN PROPRIETARY AND AFFILIATED VEHICLES

164. In the exercise of its legal ownership of and authority to invest the trust assets, BNY Mellon, N.A., has invested the trust assets of Plaintiff Henderson and the Wesson Trust in investment vehicles that profit BNY Mellon, through management fees or other means.

165. In regard to mutual funds, BNY Mellon, N.A., invested almost exclusively in proprietary mutual funds that are related to it.

166. In the case of Plaintiff Henderson, BNY Mellon, N.A., invested in funds, such as the BNY Mellon Municipal Opportunities Fund, which are issued by BNY Mellon Funds and managed by BNY Mellon Fund Advisors, both of which are related to BNY Mellon, N.A.

167. BNY Mellon, N.A., also invested in mutual funds that were linked to it, such as the Dreyfus High Yield Fund, which is managed by The Dreyfus Corporation.

168. The Dreyfus Corporation merged with Mellon Financial in 1994 and became a subsidiary of BNY Mellon Corp. when Mellon Financial and The Bank of New York merged in 2007.

169. Even ostensibly independent mutual funds that BNY Mellon, N.A., selected for the trust assets that it managed, were and are linked to BNY Mellon, N.A.

170.    For example, a small portion of the Wesson Trust portfolio is invested with TCW Emerging Markets Income Fund.

171.    TCW Emerging Markets Income Fund is managed by TCW Investment Management Company, a subsidiary of the TCW Group, Inc.

172.    BNY Mellon, N.A., has had a contract with TCW since 2001.

173.     Since then, BNY Mellon Asset Servicing has provided support for TCW's entire back- and middle-office investment operations, including trade processing, bank loan processing, investment accounting, partnership accounting, performance, attribution, analytics, financial statements, client billing, and client statements.

174.    On August 9, 2007, BNY Mellon Asset Servicing and TCW announced a renewal of that outsourcing agreement for an additional five years.

175.    At that time, TCW President William Sonneborn stated that "We look forward to continuing our partnership with BNY Mellon Asset Servicing."

176.    In regard to BNY Mellon, N.A.'s investments in mutual funds, all of BNY Mellon's choices were tainted by its own self-interest.

177.    Even in alternative investments, BNY Mellon, N.A., invariably and uniformly directed the investment assets of trust beneficiaries to itself.

178.    In the Wesson Trust, a significant portion of the trust's alternative investments are in a hedge fund managed by Mellon Hedge Advisors LLC.

179.    Indeed, that hedge fund is amongst the largest single investment in the trust account for which Ms. Henderson is a trust beneficiary.

180.     BNY Mellon, N.A.'s investment decisions on behalf of Ms. Henderson and the Wesson Trust violated the trustee's duty of care or prudence.

181.     BNY Mellon, N.A.'s uniform investment decisions on behalf of the members of the proposed Class similarly violate the trustee's duty of care or prudence.

### 5.     ONLY BNY MELLON, N.A., AND NOT THE BENEFICIARIES OF THE PROPRIETARY AND AFFILIATED INVESTMENT VEHICLE CLASS, HAD THE AUTHORITY TO MAKE THE INVESTMENT DECISIONS

182.     Barring court intervention, trust beneficiaries, who are part of the proposed Class, have little or no ability to hire or fire the trustee, terminate the trustee's investment authority, or direct the investments that the trustee is duty bound to make. *See, e.g.*, Restatement of Trusts (Second) § 78 (Duty of loyalty), Comment b.

183.     Ashby Henderson, and other members of the proposed Class, are beneficiaries of trusts in which they lack the power to make the investment decisions.

184.     Therefore, even if they believed that an investment was imprudent, they were and are powerless to unilaterally change any investment acts of BNY Mellon, N.A., unless a court intervenes.

### B.     BNY MELLON, N.A., OFFERED BETTER, NON-AFFILIATED INVESTMENTS TO OTHER CLIENTS

185.     BNY Mellon's decisions, in violation of its fiduciary duties, harmed Plaintiff Henderson and members of the proposed Class by depriving their trusts of the opportunities to invest in mutual funds, hedge funds, alternative investments, and other collective funds that were recognized as superior in performance, and less risky.

186.     BNY Mellon, N.A.'s decisions, in violation of its fiduciary duties, also

deprived Plaintiff Henderson and members of the Class of BNY Mellon, N.A.'s best

services, which made investment decisions based on the financial benefit to it, not based

on the best interests of the trusts and of the trust beneficiaries, in violation of the trust

laws of the Commonwealth of Massachusetts and those other states where BNY Mellon,

N.A., administers trusts.

187.     BNY Mellon, N.A., knew that the decision to invest the trust assets that it

managed in its own financially related investment vehicles was imprudent.

188.     For example, BNY Mellon, N.A., offered a form of non-affiliated fund,

known as an Exchange Traded Fund ("ETF")—an ETF is much like a mutual fund

traded on an exchange—*only to charitable trusts*.

189.     One aspect of a charitable trust is that it may quickly and cheaply remove

its assets from BNY Mellon, N.A., when it wishes, *e.g.*, when it considers BNY Mellon,

N.A.'s investment management fees too costly, or its funds are underperforming or are

too risky.

190.     The Wesson Trust did not have such abilities.

191.     Defendants knew that no additional benefit to Plaintiff Henderson or the

proposed Class would result from the investment in these related investment vehicles.

192.     Plaintiff Henderson and the proposed Class members have been damaged

and deprived of their right to prudent investment of their trust assets by a trustee.

193.     The uniform policy and practice of BNY Mellon, N.A., in failing to

consider investing the trust assets it managed in non-affiliated investments and instead

implementing uniform policies and practices that favored BNY Mellon, N.A.'s

financially related investment vehicles, came at the expense of Plaintiff Henderson and

the proposed Class.

**C.    THIS SECOND AMENDED COMPLAINT DOES NOT ALLEGE DEFENDANTS ENGAGED IN MISREPRESENTATIONS, FRAUDULENT OMISSIONS OR FRAUDULENT PRACTICES THAT ARE MATERIAL TO THE DECISION TO BUY OR SELL "COVERED SECURITIES"**

194.    Plaintiffs and this Second Amended Complaint do not allege in any

fashion that Defendants engaged in misrepresentations, fraudulent omissions, or

fraudulent practices that are material to the decision by one or more individuals (other

than any alleged fraudster) to buy or sell a "covered security," as defined by 15 U.S.C. §

78bb(f)(5)(E), under the Securities Litigation Uniform Standards Act ("SLUSA").

195.    The investment claims in this Seconded Amended Complaint brought by

Plaintiff Henderson are entirely based on hornbook trust law: alleged breaches of the

duty of prudent investing.

196.    As such, BNY Mellon, N.A.'s liability turns on whether it conformed to

fundamental fiduciary standards of prudence applicable to all corporate fiduciaries in

terms of:

> (1) the investment vehicles that Defendants deemed were "approved" for investing trust assets that Defendants oversaw, (2) the investment vehicles that Defendants ultimately selected for investing trust assets that Defendants oversaw, (3) the failure by Defendants to make individualized decisions for each of the trusts that they oversaw, (4) the failure by Defendants to continually review and evaluate the investments that the trust assets they oversaw were invested in, and (5) the failure by Defendants to remove trust assets from inferior quality investments because such inferior quality investments were financially linked to Defendants.

197.     The fiduciary standard owed by BNY Mellon, N.A., to Plaintiff Henderson and the proposed members of the Class, includes generally accepted practices rules and regulations established by the OCC, the FDIC and the common law on trusts.

198.     The recurring theme of BNY Mellon, N.A.'s conduct, which is a violation of its fiduciary duties, is that BNY Mellon, N.A., allowed its own financial interest in certain investment vehicles, such as proprietary mutual funds, to influence its decision-making process in regard to investing trust assets, instead of always putting the interests of the trusts and the trust beneficiaries at the forefront, as required by the law.

199.     In *Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1066 (2014), the United States Supreme Court stated that "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to the decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security.'"

200.     In this case, Plaintiff Henderson and the members of the proposed Class are trust beneficiaries of trusts managed by BNY Mellon, N.A.

201.     BNY Mellon, N.A., as trustee, not Plaintiff Henderson and the members of the proposed Class, as trust beneficiaries, has the authority to make investment decisions in regard to the trust assets.

202.     As such, this case does not concern fraudulent misrepresentations or omissions that are material to the decision of any individual, other than the fraudster, to buy or sell a "covered security."

203. Furthermore, the Ninth Circuit has held, in a similar case that: "a complaint may allege a violation of a trust administrator's fiduciary duty to a trust's beneficiaries even where that violation involves trading in covered securities so long as the complaint does not allege, either expressly or implicitly, misrepresentations, omissions, or fraudulent practices coincidental to the violation." *Stoody-Broser v. Bank of America, N.A.*, No. 09-17112, 2011 WL 2181364 (9th Cir. June 6, 2011), at *1.

204. Following that decision, in this case, the Court has twice held that the allegations regarding the manner in which the trustee invested in affiliated, and allegedly conflicted funds, is not subject to SLUSA preclusion. See e.g. Dkt. No. 72 (Order denying motion to dismiss under SLUSA preclusion); Dkt. No. 93 (Order denying motion for an order allowing interlocutory appeal).

205. Plaintiff Henderson does not allege, expressly or implicitly, any misrepresentations, omissions or fraudulent practices in connection with any "covered securities" that is coincidental to the violation.

## VII. BNY MELLON BREACHED ITS FIDUCIARY DUTIES TO THE UNLAWFUL FEES CLASS BY SECRETLY MARKING UP PRICEWATERHOUSECOOPERS' TAX PREPARATION FEES

206. At all relevant times BNY Mellon, N.A., as the corporate professional trustee of the affected trusts, was in a fiduciary relationship with Plaintiffs and the members of the proposed Unlawful Fees Class, for when these claims are asserted.

207. One of the fundamental duties of a trustee includes making sure that state and federal tax returns are prepared and filed with national and state tax authorities.

208. Previous to the time periods alleged herein, Defendants' predecessors did

in fact do all of the work in connection with the preparation and filing of these returns.

209.    There was no additional or separate fee charged for this work because this work was considered in practice and under the law to be a fundamental duty for the corporate fiduciary.

210.    No additional fee was charged for this work until management decided to turn this into an additional profit center, beginning at least when Mellon Financial Corporation undertook this effort and continuing with the merged Bank of New York Mellon after July 2, 2007.

211.    In public statements and in form communications with Plaintiffs and the class of trust beneficiaries and others, and by holding itself out as a professional trustee, Defendant BNY Mellon, N.A., and its "Wealth Management" employees and officers have expressly, impliedly and otherwise represented that BNY Mellon, N.A., will faithfully and professionally carry out fundamental trustee duties and that compensation will be based on fees disclosed to the beneficiaries through trust fee schedules, and periodic trust accountings.

212.    Defendants' repeated public statements have informed Plaintiffs and the public that it is a "global leader" and a domestic "national leader" in wealth management services and possesses the capability of carrying out "tax preparation."

213.    BNY Mellon has been managing wealth since America began creating it, providing an unparalleled level of service to private clients, family offices, institutions and endowments alike. We'd like to do the same for you.

http://www.bnymellonwealthmanagement.com/Features/FeaturesMain/Recognized

  ExpertiseMedia.html (last visited October 31, 2016).

214.    The trustee BNY Mellon, N.A., has told the beneficiaries of the Wesson and Hershenson Trusts, and tens of thousands of personal trusts, that it has prepared and filed these mandatory tax returns.

215.    BNY Mellon, N.A., in further effort to increase its profits at the expense of Plaintiffs and the proposed Class, has taken millions of dollars from the trusts under the guise of "fiduciary fees" in connection with the mandatory duty of filing standard and routine fiduciary tax returns.

216.    The trustee has turned this purported fiduciary tax return preparation fee—a routine activity that in the past was performed for no additional fee—into a profit center.

217.    Plaintiffs are informed and believe on that basis that BNY Mellon, N.A., was aware that predecessor trustees, including the Mellon Bank entities engaged in the same conduct alleged here with regard to the now combined BNY Mellon entity.

218.    The newly combined BNY Mellon failed to investigate or remedy the illegal conduct on the part of the predecessor trustee, Mellon Bank.

219.    In and of itself, the combined entity's failure to remedy a prior breach by the Mellon entities gives rise to liability under fundamental trust law.

220.    Further, BNY Mellon, N.A.'s own records show that, like its predecessor(s), BNY Mellon, N.A., has concealed the fact that the trustee has delegated tax preparation, also known as "high-volume tax work," to the outside accounting firm PricewaterhouseCoopers.

221.    BNY Mellon, N.A., has not advised Plaintiffs or the proposed Class of the relationship between PwC and BNY Mellon.

222.    As a matter of due course, BNY Mellon, N.A., has sent information to Plaintiffs Henderson and Hershenson (and/or his father), including "tax letters" as well as other beneficiaries announcing the preparation of the K-1 for the Wesson Trust and the Hershenson Trust.

223.    However, BNY Mellon, N.A., did not prepare Plaintiffs' Trusts' tax returns.

224.    BNY Mellon, N.A., also does not have a fully-staffed Tax Division capable of being solely charged with the preparation of thousands of tax returns for personal trusts.

225.    Defendants did not advise Plaintiffs and the Class members that it had delegated a material part of its trustee duties to another party, *i.e.*, PwC.

226.    Initially Mellon Financial Corporation and then BNY Mellon Corp. and PwC entered into a long-term contract as part of a high-volume tax contract with PwC that was intended to generate profits for the contracting parties.

227.    The purported fiduciary fee for tax preparation must be transparent and candid.

228.    A trustee may charge no more than it was charged for preparation of the required returns.

229.    PwC earned a profit through its work.

230.    BNY Mellon, N.A., also made additional compensation, and/or "marked

up" the cost that PwC charged to prepare the returns, generating additional fee income for BNY Mellon, N.A.

231.    The Wealth Managers for both Plaintiffs were aware of the delegation of the fiduciary returns but did not disclose either the delegation or the mark up to Plaintiffs.

232.    The failure to advise Plaintiffs and Class members that PwC was engaged to prepare the returns was and continues to be a breach of fiduciary duty.

233.    All tax preparation fees must be returned to the Class.

234.    Plaintiffs will seek injunctive relief at the earliest opportunity that fair discovery is provided.

235.    The preparation of the tax returns and any damages or relief available to Plaintiffs and the Class for BNY Mellon, N.A.'s failure to disclose the delegation of this duty and its markup of PwC's charges has nothing to do with trust investments and the related investment claims of the Proprietary and Affiliated Investment Vehicle Class.

236.    BNY Mellon, N.A.'s decisions, in violation of its fiduciary duties, also deprived Plaintiffs and the members of the Class of the best services of BNY Mellon, N.A., which made the manner of tax preparation decisions based on the financial benefit to it.

237.    In connection with the duty to prepare and file the annual tax returns, the trustee did not act based on the best interests of the trusts and of the trust beneficiaries, in violation of trust law including but not limited to the laws of the Commonwealth of Massachusetts.

238.    BNY Mellon, N.A., knew that the decision to delegate a material duty to a third party was a matter that had to be brought to the attention of Plaintiffs and the Class members.

239.    The trustee's delegation of the tax preparation work inured only to the benefit of the trustee, who is obligated to prepare tax returns with no additional compensation, and to PwC which enjoyed the benefits of a profitable, ongoing contractual relationship with a major bank.

240.    Plaintiffs and the Class members have been damaged and deprived of the highest level of trustee services and of their right to prudent administration of their trust assets.

241.    The uniform policy and practice of the administration of the trust in this regard favored BNY Mellon, N.A., financially at the expense of Plaintiffs and the proposed Class.

242.    As a result of the above-described conduct, BNY Mellon, N.A., has also acted in violation of the duty of loyalty, and Plaintiffs and the Class members are entitled to all remedies available under the law.

## VIII.  CLASS ACTION ALLEGATIONS

243.    Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of two separate Nationwide Classes. The Proprietary and Affiliated Investment Vehicle Class is defined as:

From 1998 to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, (2) for which Defendants had investment discretion or recommendation responsibility over principal and/or income, and (3) which had trust assets invested in investments that were financially affiliated with Defendants. Excluded from the Nationwide Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government.

The Unlawful Fees Class is defined as:

From 2004 to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, and where Defendants charged a "fiduciary" fee for one or more of the covered years, and (2) the paid preparer of the fiduciary return covered by the fee was PricewaterhouseCoopers (or some other unidentified entity) for one or more of the covered years. Excluded from the Nationwide Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government.

244.    **Numerosity**: For both classes, BNY Mellon, N.A., serves as the trustee for thousands, if not tens of thousands of trusts, each of which may have multiple trustors, grantors, trust beneficiaries, remaindermen, co-trustees and/or successor trustees. BNY Mellon, N.A., also serves as trustee for trusts throughout the United States. Plaintiffs do not know the exact number and identities of these trusts but their identities are presumably known by BNY Mellon, N.A. The large number of potential Class members and the fact that they are geographically dispersed makes joinder of all members impracticable.

245.    **Common Questions of Law or Fact:** The questions of law and fact common to the proposed Proprietary and Affiliated Investment Vehicle Class include,

without limitation:

a.      whether the Defendants' corporate policy and practice of designating related investment vehicles, such as proprietary mutual funds and hedge funds sponsored or managed by the Defendants, as appropriate investments for trust beneficiaries, has violated the Defendants' duty of prudent investing;

b.      whether the Defendants' corporate policy and practice of failing to invest trust funds in non-affiliated investment vehicles, such as proprietary mutual funds, hedge funds managed by the Defendants or their related entities, or other collective investments and instead investing trust funds in related investment vehicles has violated the Defendants' duty of prudent investing;

c.      whether the Defendants' refusal to divest its trust accounts from the related investment vehicles that were underperforming was a breach of the Defendants' duty of prudent investing;

d.      whether a declaratory judgment should issue that the Defendants violated their duties as Trustee with respect to the affected trust accounts;

e.      whether Plaintiffs and the Class members are entitled to injunctive relief;

f.      whether Plaintiffs and the Class members are entitled to restitution, disgorgement, and/or other equitable relief and the measure of such relief; and

g.      whether Plaintiffs and the Class members are entitled to compensatory damages according to proof and the measure of such relief.

246.    The questions of law and fact common to the proposed Unlawful Fees

Class include, without limitation:

a.      whether the Defendants' corporate policy and practice of delegating the preparation of tax returns to third parties is lawful;

b.      whether the Defendants failed to advise the Class members in writing of this delegation;

c.      whether the Defendants unlawfully received compensation as a result of the delegation of the trustee's duty of administering a trust in the interest of the trust accounts and the beneficiaries;

d.      whether a declaratory judgment should issue that the Defendants violated their duties as Trustee with respect to the affected trust accounts;

e.      whether Plaintiffs and the Class members are entitled to injunctive relief;

f.      whether Plaintiffs and the Class members are entitled to restitution, disgorgement of fees, and/or other equitable relief and the measure of such relief;

g.      whether Plaintiffs and the Class members are entitled to compensatory damages according to proof and the measure of such relief and punitive damages as allowed by law;

h.      whether a declaratory judgment should issue that the Defendants violated their duties as Trustee with respect to the affected trust accounts;

i.      whether Plaintiffs and the Class members are entitled to injunctive relief;

j.      whether Plaintiffs and the Class members are entitled to restitution, disgorgement of fees, and/or other equitable relief and the measure of such relief; and

k.      whether Plaintiffs and the Class members are entitled to compensatory damages according to proof and the measure of such relief and punitive damages as allowed by law.

247.    **Typicality — Proprietary and Affiliated Investment Vehicle Claims:**

BNY Mellon, N.A.'s breaches of fiduciary duty are uniform to the proposed Class members. BNY Mellon, N.A., invested the assets of the Wesson Trust in related investment vehicles, such as the proprietary BNY Mellon and Dreyfus mutual funds, pursuant to a corporate policy that affected all trust accounts in a uniform manner and was not made with any individual account characteristics in mind. BNY Mellon's refusal to divest those related investment vehicles which performed poorly was also made pursuant to a corporate policy and affected all trust accounts in a uniform manner. Plaintiff Henderson's claims are typical of those the members of the Class.

Plaintiff Henderson's interests are coincident with and not antagonistic to the members of the Class.

248. **Typicality —Unlawful Fees Claims:** BNY Mellon, N.A.'s breaches of fiduciary duty are uniform to the proposed Class members. BNY Mellon, N.A., delegated the preparation of the annual tax returns to a third party without notice to the beneficiaries and without explaining to the beneficiaries how they will be charged after the delegation and whether BNY Mellon profited from the delegation. Plaintiffs' claims are typical of those of the members of the Class, and are coincident with and not antagonistic to the members of the Class.

249. **Fair and Adequate Representation of the Class**: Plaintiffs' claims are typical of the claims of the other members of the respective Classes. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. In addition, Plaintiffs are represented by counsel who are skilled and experienced in the prosecution of complex class actions and trust cases. Plaintiffs and their counsel are more than capable of fairly and adequately protecting the interests of the Classes.

250. **Superiority of the Class Action Device:** The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications. The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to

adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. The Classes are readily identifiable from the files of BNY Mellon, N.A., and PricewaterhouseCoopers, and prosecution as a class action will eliminate the possibility of repetitious litigation. Class treatment will also permit the adjudication of relatively small claims by many members of the Classes who otherwise could not afford to litigate claims such as the ones asserted in this Second Amended Complaint. Plaintiffs know of no unusual difficulty that will be encountered in the management of this action as a class action.

**IX.     CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty as to Investment Claims On Behalf of the Proprietary and Affiliated Investment Vehicle Class)**

251.     At all relevant times BNY Mellon, N.A., as the corporate trustee of the affected trusts, was in a fiduciary relationship with Plaintiff Henderson and the members of the proposed Proprietary and Affiliated Investment Vehicle Class.

252.     As trustee, BNY Mellon, N.A., had the power and responsibility to administer and invest the trust assets in the best interests of the trust beneficiaries, and no one else.

253.     Conversely, the trust beneficiaries had no control over the investments.

254.     BNY Mellon, N.A.'s duties as a professional trustee to the beneficiaries of the trusts it administers include the rigorous duty to invest prudently under the common law Prudent Investor Rule (Restatement of Trusts (Third) § 227), and the

Uniform Prudent Investment Act codified in most of the states, including the

Massachusetts Prudent Investor Act (M.G.L. c. 203C, § 1, et al.).

255.   BNY Mellon, N.A., breached its fiduciary duty to Plaintiff Henderson and

the members of the proposed Class by approving investments for trust assets under its

management because they were financially related to BNY Mellon, such as proprietary

mutual funds and investment vehicles that were sponsored and/or managed by it.

256.   BNY Mellon, N.A., breached its fiduciary duty to Plaintiff Henderson and

the members of the proposed Class by directing, placing and investing trust assets

under its management into investments that were financially related to BNY Mellon,

such as proprietary mutual funds and investment vehicles that were sponsored and/or

managed by it.

257.   BNY Mellon, N.A., breached its fiduciary duty to Plaintiff Henderson and

the members of the proposed Class by failing to properly administer their trusts,

including but not limited to making individualized decisions in the best interests of the

trusts and trust beneficiaries.

258.   BNY Mellon, N.A.'s continuing policy and acts set out above by which

they refuse to consider and/or strongly disfavor non-affiliated investment vehicles or

other collective investments for the trusts, while investing trusts in their own inferior

investment vehicles in which it had a financial interest, was and is a breach of BNY

Mellon's duty to invest prudently.

259.   BNY Mellon, N.A., breached its fiduciary duty to Plaintiff Henderson and

the members of the proposed Class by failing to consistently and continually monitor,

evaluate and review the investments that trust assets are placed into in order to ensure that those investments remain in the best interests of Plaintiff Henderson and the members of the proposed Class.

260.    BNY Mellon, N.A., breached its fiduciary duties to Plaintiff Henderson and members of the proposed Class by failing to remove trust assets from investment vehicles when those investment vehicles were no longer in the best interests of Plaintiff Henderson and the members of the proposed Class.

261.    As a proximate result of these breaches of fiduciary duty, Plaintiff Henderson and every proposed Class member has sustained damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### (Unjust Enrichment/Restitution as to Investment Claims On Behalf of The Proprietary and Affiliated Investment Vehicle Class)

262.    As a result of the misconduct alleged herein, BNY Mellon, N.A., unjustly received a benefit at the expense of Plaintiff Henderson and members of the proposed Proprietary and Affiliated Investment Vehicle Class.

263.    That benefit consists primarily of management fees, other fees, and other financial benefits that BNY Mellon, N.A., unjustly obtained from the trusts to which they supposedly owed the highest fiduciary duties, and consisted of benefits received from selecting certain investment vehicles, such as proprietary mutual funds, in which BNY Mellon had a vested financial interest.

264.    BNY Mellon, N.A., received financial benefits, such that it would be unjust to allow it to retain such benefits.

265.     These financial benefits were obtained from its misconduct, and it would be unfair and unjust to allow BNY Mellon, N.A., to retain them without providing compensation to Plaintiff Henderson and the members of the proposed Class.

266.     BNY Mellon, N.A., acted with conscious disregard of the rights of Plaintiff Henderson and the members of the proposed Class.

267.     Plaintiff and members of the proposed Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust based on all profits, benefits, and other compensation obtained by BNY Mellon, N.A., from its misconduct.

### THIRD CAUSE OF ACTION
### (Accounting as to Investment Claims On Behalf of The Proprietary and Affiliated Investment Vehicle Class)

268.     Plaintiff Henderson and the members of the proposed Proprietary and Affiliated Investment Vehicle Class are the beneficiaries of trusts managed by BNY Mellon, N.A., as a trustee.

269.     As such, BNY Mellon, N.A., owes Plaintiff Henderson and the members of the proposed Class a fiduciary duty. Due to that fiduciary relationship, BNY Mellon, N.A., owes an obligation to Plaintiff Henderson and members of the proposed Class with an accounting of its trust accounts.

270.     Accordingly, it is necessary and appropriate for this Court to order trust accounting of Plaintiff Henderson and members of the proposed Class.

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty On Behalf of The Unlawful Fees Class)

271.     At all relevant times BNY Mellon, N.A., as the corporate trustee of the

affected trusts, was in a fiduciary relationship with Plaintiffs Henderson and Hershenson and the members of the proposed Unlawful Fees Class.

272.    As trustee, BNY Mellon, N.A., had the power and responsibility to administer the trust assets in the best interests of the trust beneficiaries, and no one else.

273.    Conversely, the trust beneficiaries had no control over the hiring of an accounting firm to prepare thousands of tax returns.

274.    BNY Mellon, N.A., breached its fiduciary duty to Plaintiffs Henderson and Hershenson and the members of the proposed Class by failing to investigate the actions of the predecessor trustees who engaged in the same conduct alleged here.

275.    BNY Mellon, N.A.'s failure to investigate, advise and act is a breach of fiduciary duty.

276.    Further, by remaining silent, BNY Mellon, N.A., failed to disclose material facts to Plaintiffs Henderson and Hershenson and the proposed Class, thereby preventing them from discovering or being put on notice of facts giving rise to a breach of fiduciary duty.

277.    BNY Mellon, N.A., breached its fiduciary duties to Plaintiffs Henderson and Hershenson and the members of the proposed Class by hiring an accounting firm without notice.

278.    BNY Mellon, N.A., breached its fiduciary duties to Plaintiffs Henderson and Hershenson and the members of the proposed Class by failing to disclose how much the accounting firm charged and how much the trustee unlawfully marked up the fee.

279.    BNY Mellon, N.A., breached its fiduciary duties to Plaintiffs Henderson and Hershenson and the members of the proposed Class by imposing and collecting the marked-up fee.

280.    BNY Mellon, N.A., breached its fiduciary duty to Plaintiffs Henderson and Hershenson and the members of the proposed Class by failing to properly administer their Trusts.

281.    BNY Mellon, N.A.'s continuing policy and acts are a breach of its duty of prudent administration and the duty of loyalty.

282.    As a proximate result of the breaches of fiduciary duty, Plaintiffs Henderson and Hershenson and every proposed Class member have sustained damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### (Accounting as to the Unlawful Fees Claim)

283.    Plaintiffs Henderson and Hershenson and the members of the proposed Class are the beneficiaries of trusts that are managed by BNY Mellon, N.A., as a trustee.

284.    As such, BNY Mellon, N.A., owes Plaintiffs Henderson and Hershenson and the members of the proposed Unlawful Fees Class a fiduciary duty.

285.    Due to that fiduciary relationship, BNY Mellon, N.A., owes an obligation to Plaintiffs Henderson and Hershenson and members of the proposed Class to provide trust accounting as to the tax preparation fees including, but not limited to, disclosure of the contract with PwC, when and why any related tax preparation were collected,

and how much the tax preparation fees that the trustee collected exceeded the money charged to the trustee by the third party PwC.

286.    Accordingly, it is necessary and appropriate for this Court to order trust accounting of Plaintiffs Henderson and Hershenson and members of the proposed Class.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants, jointly and individually, as follows:

1.    For class certification, with Plaintiffs selected as the representative of the Class and their counsel as Class counsel;

2.    For injunctive relief, prohibiting Defendants from continuing to engage in or resuming the unlawful or unfair business practices described in this Second Amended Complaint;

3.    For compensatory damages, in an amount sufficient to fully compensate for all harm caused by BNY Mellon;

4.    For an accounting;

5.    For disgorgement of trustee fees;

6.    For an accounting of each of the Class Trusts;

7.    For restitution for the monies that Defendants unjustly retained from Plaintiffs and each Class member;

8.    For a constructive trust on the assets of Plaintiffs and each Class member which Defendants have wrongfully withheld;

9.    For pre-judgment and post-judgment interest at the maximum rate allowable by law;

10.    For appointment of a guardian ad litem, or Trust Protector, where appropriate with the power to choose another Trustee;

11.    For costs of suit, including reasonable attorneys' and experts' fees; and

12. For such other and further relief, including punitive damages as the Court may find just and proper.

### DEMAND FOR JURY TRIAL

On their own behalf and that of the prospective Class members, Plaintiffs hereby request trial by jury as to all issues so triable.

Dated: November 28, 2016

*/s/ John Roddy*
John Roddy, BBO # 424240
jroddy@baileyglasser.com
Elizabeth Ryan, BBO #549632
eryan@baileyglasser.com
**BAILEY & GLASSER LLP**
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
**BAILEY & GLASSER LLP**
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Derek G. Howard (admitted *pro hac vice*)
derek@derekhowardlaw.com
**DEREK G. HOWARD LAW FIRM, INC.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

J. Brian McTigue (admitted *pro hac vice*)
bmctigue@mctiguelaw.com
Regina M. Markey (admitted *pro hac vice*)
rmarkey@mctiguelaw.com
Brooke Edwards (admitted *pro hac vice*)
bedwards@mctiguelaw.com
**McTigue Law LLP**
4530 Wisconsin Avenue, NW, Suite 300
Washington D.C. 20016
Telephone: (202) 364-6900
Facsimile: (202) 364-9960


*Attorneys for Plaintiff and the Putative Classes*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on November 28, 2016.

_/s/ John Roddy_
John Roddy