# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ASHBY HENDERSON**, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>**BNY MELLON, NATIONAL ASSOCIATION,** et al.,<br><br>        Defendants. | Case No. 1:15-cv-10599-PBS |

## BNY MELLON, N.A.'S SUPPLEMENT TO OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Mary J. Hackett (admitted *pro hac vice*)
mhackett@mcguirewoods.com
K. Issac deVyver (admitted *pro hac vice*)
kdevyver@mcguirewoods.com
Melissa M. Taylor (admitted *pro hac vice*)
mmtaylor@mcguirewoods.com
Nellie E. Hestin (BBO #676886)
nhestin@mcguirewoods.com
**MCGUIREWOODS LLP**
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile:  (412) 667-6050

*Attorneys for Defendant BNY Mellon, N.A.*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................1

II.   BACKGROUND ........................................................................................................2

    A.   Lead Counsel Suggests Abandoning Ms. Henderson as a Class Representative ....3

    B.   Ms. Henderson Submits a Letter to the Court Contradicting Lead Counsel's
    Representations and Challenging the Settlement......................................................4

    C.   Lead Counsel and Ms. Henderson Again Diverge, This Time Over the
    Motion to Intervene..................................................................................................6

    D.   Lead Counsel Again Suggests Dismissing Ms. Henderson's Claim, and
    Mr. McTigue Scuttles the Parties' Scheduled Mediation .......................................7

    E.   Lead Counsel Abandons Ms. Henderson's Affiliated Funds Claim, and
    Ms. Henderson Retains New Counsel ...................................................................10

III.   ARGUMENT ...........................................................................................................10

    A.   The Irreversible Breakdown Ms. Henderson Has Caused with Lead Counsel
    Renders Ms. Henderson an Inadequate Representative.........................................10

    B.   Mr. Hershenson's Interests Are Not Aligned with the Class Because He Is
    Keeping His Terminated Trust Open Solely to Extract Individual Benefits That
    Would Not Inure to the Class.................................................................................13

    C.   Lead Counsel Cannot Adequately Represent Class Members After Firing the
    Class Representative and Making Misstatements to BNY Mellon's Counsel.......15

IV.   CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

Page

**CASES**

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985) ............................................................................10, 15

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ...................................................................................13

*Greene v. Brown*,
   451 F. Supp. 1266 (E.D. Va. 1978) ........................................................................12

*Griffin v. GK Intelligent Systems, Inc.*,
   196 F.R.D. 298 (S.D. Tex. 2000) ............................................................................12

*In re Credit Suisse-AOL Sec. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008) ...............................................................................14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   No. 01-12257-PBS, 2008 WL 53278 (D. Mass. Jan. 3, 2008) ......................... 16-17

*Jones v. Ford Motor Credit Co.*,
   No. 00 Civ. 8330, 2005 WL 743213 (S.D.N.Y. Mar. 31, 2005) .............................15

*Kassover v. Comput. Depot, Inc.*,
   691 F. Supp. 1205 (D. Minn. 1987), *aff'd*, 902 F.2d 1571 (8th Cir. 1990) ............11

*Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*,
   254 F. Supp. 3d 1007 (N.D. Ill. 2017) ....................................................................17

*Price v. USAA Cas. Ins. Co.*,
   No. 2:10-CV-02152, 2012 WL 2847916 (W.D. Ark. July 11, 2012) .....................13

*Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.*,
   136 F.R.D. 658 (D. Ore. 1991) ...............................................................................12

*Tardiff v. Knox County*,
   247 F.R.D. 225 (D. Mass. 2008) .............................................................................13

**RULES**

Fed. R. Civ. P. 23(a)(4) ....................................................................................10, 13

Fed. R. Civ. P. 23(g)(4) ...........................................................................................15

# I.   **INTRODUCTION**

This case cannot be certified as a class action because, among other reasons, the named Plaintiffs and their counsel are inadequate representatives.   BNY Mellon has already raised certain issues with respect to Plaintiff Ashby Henderson's adequacy to serve as class representative.  *See* Dkts. 320, 346.  Recent events, however, have prompted BNY Mellon to file this Supplement to its Opposition to Plaintiffs' Motion for Class Certification in order to clarify why no class can be certified.[1]

First, the relationship between Ms. Henderson and her personal counsel Mr. McTigue, on the one hand, and lead counsel Bailey & Glasser LLP and the Howard Law Firm (collectively "Lead Counsel"), on the other, is irreconcilably broken.   Ms. Henderson is either unable or unwilling to communicate with Lead Counsel.   The evidence adduced since the parties last briefed class certification confirms that, despite the Court's admonitions, Ms. Henderson still listens only to Mr. McTigue, and that Ms. Henderson and Lead Counsel disagree over fundamental case strategy.   That, combined with Ms. Henderson's ever-fluctuating views on how to prosecute claims on behalf of the putative class, render her an inadequate class representative.

Second, Mr. Hershenson's trust terminated according its terms upon the death of Mr. Hershenson's father in November 2015, with the trust corpus to be distributed among Mr. Hershenson and his siblings.   Rather than allow the trust to reach its natural conclusion, Mr. Hershenson has forced BNY Mellon to file an accounting—which is currently stayed pending this action—and is holding the trust open artificially so that he may remain a plaintiff in this case and exact individual benefits that would not accrue to class members.   As the Court suggested at the March 20 conference, Mr. Hershenson's circumstances and interests are not

---

[1] BNY Mellon requested leave to supplement the briefing on adequacy at the May 31, 2018, status conference and the Court granted the request.  Hearing Trans. at 8, 10.

aligned with the class members he seeks to represent, and Mr. Hershenson is therefore an inadequate class representative.

Third, Lead Counsel has demonstrated a repeated willingness to drop Ms. Henderson—and the affiliated investments claim she brings—from this action without her consent, culminating in Lead Counsel's voluntary withdrawal of their motion for class certification as it relates to the affiliated investments claim.  Lead Counsel's willingness to voluntarily dismiss Ms. Henderson's class claim apparently without her permission demonstrates that they are not acting in her interest or in the interest of the putative class that she represents.

In short, Ms. Henderson, Mr. Hershenson and Lead Counsel are acting at cross-purposes (and, in Ms. Henderson's case, at the behest of an attorney whose conduct this Court described as "deeply disturbing," "contumacious," and "uncivil").  They have repeatedly demonstrated that they cannot fairly and adequately protect the interests of the class as required by Federal Civil Rule 23(a)(3).  Because Plaintiffs fail to satisfy this fundamental prerequisite, Plaintiffs' Motion for Class Certification should be denied.

## II.    **BACKGROUND**

The Court is familiar with past events bearing on the adequacy of Plaintiff Ashby Henderson and her counsel, Brian McTigue.  Briefly, in March 2016, the relationship between Mr. McTigue and Plaintiffs' other counsel—Bailey & Glasser LLP and the Howard Law Firm—began to deteriorate.  *See* Dkt. 146 at 13 (referencing letter to Mr. McTigue from Lead Counsel "detailing issues with Mr. McTigue's work and behavior").  The discord reached an apex in May 2016, when Mr. McTigue sent Mr. Howard a discharge letter signed by Ms. Henderson and Mr. McTigue.  *See* Dkt. 118 at 4.  In response, Bailey & Glasser sent a letter to Ms. Henderson which she later described to the Court as "intimidating."  Dkt. 141 at 13.  That same day, Mr. McTigue

sent a discharge letter (with his own and Ms. Henderson's signatures) to Bailey & Glasser.  *See* Dkt. 118 at 4.

Plaintiffs' counsel subsequently asked the Court to weigh in on their dispute.  In their briefing, the Howard Law Firm and Bailey & Glasser raised concerns that Ms. Henderson was "merely . . . ratifying Mr. McTigue's actions" (Dkt. 135-1 at 3; Dkt. 146 at 12) and was under the sway of Mr. McTigue's "falsehoods, confabulat[ions]," and "misinform[ation]" (*id.* at 3, 8, 10, 12, 13).  At an *ex parte* hearing on July 18, 2016, this Court commented on the "deeply troubling" nature of the situation (*see, e.g.*, Dkt. 161 at 8, 15, 16, 52, 59, 72, 73) and observed that the discord might bear on the adequacy of the class representative and class counsel (*see id.* at 10, 72).  On September 30, 2016, the Court denied Mr. McTigue's motion to be appointed class counsel because of his  "deeply disturbing," "contumacious," and "uncivil" conduct.  Dkt. 192 at 2, 4.

On October 13, 2016, the Court held a status conference at which Ms. Henderson represented that she, Mr. McTigue, and other counsel had reached an agreement to amicably proceed with Bailey & Glasser and the Howard Law Firm serving as co-lead counsel.  *See* Dkt. 202.  On the basis of this representation, the Court declined to strike Ms. Henderson as class representative at that time, but acknowledged that Ms. Henderson's adequacy was an issue to be explored in discovery.  *See id.* at 20.  Although BNY Mellon's subsequent motion to strike her as class representative was denied in September 2017, Dkt. 370, the recent events discussed below again call into question Ms. Henderson's adequacy.

## A.    Lead Counsel Suggests Abandoning Ms. Henderson as a Class Representative.

The Court held oral argument on Plaintiffs' motion for class certification in early November 2017.  A few weeks later, the parties mediated and reached a class settlement in

principle.  After nearly three months of negotiating and memorializing a settlement agreement, on February 16, 2018, the Friday before the parties were due to execute the settlement agreement, Lead Counsel sent BNY Mellon's counsel an email stating that Lead Counsel could not "locate" Ms. Henderson, and asking whether BNY Mellon would be "willing to proceed" with the settlement without her:

| | |
|---|---|
| **From:** | Gregory Y. Porter <GPorter@baileyglasser.com> |
| **Sent:** | Friday, February 16, 2018 4:08 PM |
| **To:** | Hackett, Mary J.; deVyver, K. Issac; Hestin, Nellie E. |
| **Cc:** | John Roddy; Elizabeth Ryan; 'Derek G. Howard (derek@derekhowardlaw.com)' |
| **Subject:** | BNY Mellon |

Counsel,

We tried to reach you by phone, but none of you answered. We have Hershenson's signature on the settlement agreement, but are struggling to locate Henderson and get her signature. If we cannot get Henderson to sign over the weekend, we wonder if defendant is willing to proceed with Hershenson alone as the signatory and proposed class representative for the settlement class. Obviously, this would require revisions to the papers, but we don't think those revisions are all that material from an editing perspective.

I assure you that all plaintiffs' counsel remain committed to seeing the settlement through. We apologize for this 11th hour development before a long weekend and are available to discuss at your convenience.

Regards,

Greg

*See* Ex. A.

BNY Mellon rejected this proposal and suggested that Lead Counsel take additional time to contact Ms. Henderson.  Four days later, on February 20, 2018, Lead Counsel obtained Ms. Henderson's signature on the settlement agreement.  *See* Dkt. 423-1.  Plaintiffs submitted their motion for preliminary approval of the settlement on March 4, 2018.  Dkt. 423.

**B.      Ms. Henderson Submits a Letter to the Court Contradicting Lead Counsel's Representations and Challenging the Settlement.**

On the same day Plaintiffs' motion for preliminary approval was filed, the Court posted to the docket a letter that Ms. Henderson had evidently written to the Court on February 16—the *same day* Lead Counsel suggested cutting her out of the settlement—expressing dissatisfaction

4

with the terms of the parties' settlement.  Dkt. 421.  Attached as an exhibit to her letter was an

email Ms. Henderson had sent to all of her lawyers on February 16, stating that she could not

accept the settlement:

---

Ashby <ashbyhenderson@comcast.net>                                   2/16/2018 11:15 AM

## Settlement

To jroddy@baileyglasser.com • Brian McTigue <bmctigue@mctiguelaw.com> • derek@derekhowardlaw.com •
gporter@baileyglasser.com • bedwards@mctiguelaw.com • eryan@baileyglasser.com •
srosenblatt@mctiguelaw.com

---

I cannot accept the settlement because after two years the defendant is permitted to charge excessive fees.
This is not in the best interest of the beneficiaries.
I feel accepting this settlement would go completely against what a class representative should do and I want to do
the right thing.
Please petition the judge to move this quarter of Wesson Trust to The Bank of America who holds the other 3
Wesson Trust accounts for my family, as we do not want to be charged excessive fees.
Regretfully,
Ashby Henderson
cc: The Honorable Chief Judge Patti B. Saris 1 Courthouse Way Boston, Massachusetts 02210
<bmctigue@mctiguelaw.com> <jroddy@baileyglasser.com> <gporter@baileyglasser.com>
<bedwards@mctiguelaw.com> <eryan@baileyglasser.com> <srosenblatt@mctiguelaw.com>

---

*Id.* at 2.  Thus, Ms. Henderson communicated her concerns about the settlement to Lead Counsel

on the morning of February 16 and, several hours later, Lead Counsel emailed BNY Mellon that

they were "struggling to locate Henderson."

Following these filings, the Court held a status conference with the parties on March 20,

2018, at which the Court expressed concern regarding Ms. Henderson's letter and seemingly

shifting positions:

> THE COURT:  …So let's start with Ms. Henderson telling me she doesn't agree
> with the settlement.

> MS. RYAN:  Yes, Your Honor.  So that letter was sent to the Court by Ms.
> Henderson on the 16th of February.  And the letter itself reflects a
> misreading of the language in the settlement agreement.  After the letter
> was sent, that misreading was addressed, and Ms. Henderson signed the
> settlement agreement on February 20th.

> THE COURT: I do not view that as adequate. It was on a blank piece of paper, she's never revoked this letter …. So I would need her to come in and tell me that she agrees with the settlement, for starters. She volunteers to come in and tell me, quote, I would be happy to come to Boston, if needed, to work on a better solution. She may well have to do that and come in here on a preliminary approval.
>
> …
>
> And I'm not sure she's a fair and adequate class representative anymore, because I'm not sure she agrees with the settlement. I'm not convinced of it.

Dkt. 427 at 4-5. The Court directed the parties to continue to work on their settlement and submit additional submissions by May 22, 2018. Dkt. 426. Plaintiffs' counsel assured BNY Mellon's counsel that Ms. Henderson was supportive of the settlement.

## C.   Lead Counsel and Ms. Henderson Again Diverge, This Time Over the Motion to Intervene.

While the parties were continuing to discuss settlement, on April 4, 2018, two proposed intervenor plaintiffs filed a Motion to Intervene. *See* Dkt. 430. On May 2, 2018, the day on which the parties' responses were due, Plaintiffs sought a one-day extension of the deadline, explaining that Plaintiffs' counsel had been out of the office for other matters. Dkt. 438.

The next day, Lead Counsel filed an Opposition to the Motion to Intervene on behalf of only Mr. Hershenson—not Ms. Henderson. *See* Dkt. 440. In a footnote, Lead Counsel represented that Ms. Henderson and Mr. McTigue had waited until the last minute to express that they would not oppose the motion to intervene, and that Lead Counsel believed Mr. McTigue was again not acting "in the best interests of the putative classes nor meeting his obligations to work in good faith with lead counsel":

> Mr. McTigue waited until a few hours before the opposition was due before conveying Ms. Henderson's purported position [that she consented to intervention]. Counsel promptly emailed Mr. McTigue asking why he had not conveyed Ms. Henderson's position sooner and asking to speak to Ms. Henderson about the opposition. Mr. McTigue did not respond. Given that Ms. Henderson

and Mr. McTigue did not convey a position to Mr. Roddy during their phone call on the same day, that Ms. Henderson had to end the call to go to work, and the timing of Mr. McTigue's email during the middle of Ms. Henderson's work day, ***we are concerned that Mr. McTigue's conduct is not in the best interests of the putative classes nor meeting his obligations to work in good faith with lead counsel.***

*Id.* at 2 n.1 (emphasis added).

Later that same day, Ms. Henderson filed a separate response, signed by Mr. McTigue, taking a different strategic position and indicating she did *not* oppose the motion to intervene.

*See* Dkt. 441. Ms. Henderson and Mr. McTigue disputed Lead Counsel's version of events:

Hershenson Counsel filed a Response earlier today containing a footnote which mischaracterizes the communications on the Motion to Intervene between Hershenson counsel and Ms. Henderson and her McTigue Law counsel . . . [O]n May 1st, when Derek Howard sent Brian McTigue a draft opposition to the Motion[,] McTigue immediately forwarded the communication to Henderson. The next morning at 9 am Henderson and Brian McTigue called Greg Porter's cell and office phones and left a voicemail. They next tried to call Elizabeth Ryan to no avail. They then reached John Roddy. He informed them that he didn't care one way or another about the Motion. Greg Porter returned the call later on May 2 and suggested a call later that afternoon at 4:45pm. Brian McTigue, on behalf of Ashby Henderson, emailed Greg Porter at 12:40pm that Ashby Henderson was not opposed to the Motion to Intervene.

*Id.* at 1 n.1. Plaintiffs have offered no further explanation regarding this breakdown in communications or divergence in strategy between Ms. Henderson/Mr. McTigue and Lead Counsel.

**D.   Lead Counsel Again Suggests Dismissing Ms. Henderson's Claim, and Mr. McTigue Scuttles the Parties' Scheduled Mediation.**

Notwithstanding the growing disconnect between Ms. Henderson/Mr. McTigue and Lead Counsel, the parties continued to discuss the settlement and scheduled a third round of mediation before Judge Diane Welsh on June 15, 2018. *See* Dkt. 442 at 3. BNY Mellon insisted, and Plaintiffs' counsel agreed, that Ms. Henderson (and Mr. Hershenson) would personally participate in the mediation to ensure that the class representatives were supportive of the

settlement.   At Plaintiffs' request, and purportedly in order to increase the likelihood of a resolution, the parties also scheduled a pre-mediation telephonic conference with Judge Welsh for May 8, 2018.  *Id.*

On May 7, the day before the scheduled call, Lead Counsel emailed Judge Welsh, copying all counsel as well as Ms. Henderson and Mr. Hershenson, asserting that "[i]f we do not settle this lawsuit, we will (1) withdraw the motion to certify a class on the proprietary fund claims, (2) dismiss proprietary investment claims, and (3) press on with tax-prep-fee claims." *See* Ex. B.

On May 8, all parties and their counsel (including Ms. Henderson and Mr. McTigue) participated in the call with Judge Welsh, during which all parties and all counsel (including Ms. Henderson and Mr. McTigue) confirmed the June 15 mediation date.  *See* Dkt. 442 at 3. Immediately following the call, Mr. McTigue emailed Judge Welsh that he was now unavailable on June 15, and represented in follow-up emails that Ms. Henderson wanted him to personally attend the mediation.   Mr. McTigue further represented that Lead Counsel did not have Ms. Henderson's agreement to dismiss her claims:

**From:** Brian McTigue [mailto:bmctigue@mctiguelaw.com]
**Sent:** Monday, May 14, 2018 9:49 AM
**To:** Derek Howard <derek@dhowlaw.com>; 'Elizabeth Ryan (eryan@baileyglasser.com)' <eryan@baileyglasser.com>;
'Gregory Y. Porter (GPorter@baileyglasser.com)' <GPorter@baileyglasser.com>; 'jroddy@baileyglasser.com'
<jroddy@baileyglasser.com>
**Cc:** Regina Markey <rmarkey@mctiguelaw.com>; James Moore <jmoore@mctiguelaw.com>; Regina Riffe
<rriffe@jamsadr.com>; Ashby Baird Henderson (ashbyhenderson@comcast.net) <ashbyhenderson@comcast.net>;
James Moore <jmoore@mctiguelaw.com>
**Subject:** RE: BNYM Trust: Mediation June 15th.

Derek and Greg,
Neither of your firms has communicated with me before you informing Judge Welsh that plaintiffs would proceed with
the mediation on June 15th.  As I had said in writing, I want to be present.  Ashby Henderson wants me to be there.

You also disclosed to defendants in an email that you will dismiss Ashby Henderson's Affiliated Fund claims if the
mediation does not result in a settlement.  You do not have Ashby's agreement to dismiss her claims, nor do you have
her agreement to disclose your plans, which are privileged, to defendants.

1

Ashby and I are free July 2nd, the next time that Judge Welsh has an opening to mediate.
We are also generally free beyond that date.

Brian McTigue, counsel to Ashby Henderson

*See* Ex. C.  As a result of Mr. McTigue's emails, the mediator cancelled the June 15 mediation

and offered the parties alternative dates in late Summer.

Since then, the parties have continued to discuss mediation.  While BNY Mellon's

counsel provided its availability across Judge Welsh's open dates, and Lead Counsel responded

with their availability as well as that of Mr. Hershenson, Lead Counsel was not able to provide

Ms. Henderson's availability.  Following repeated requests, Mr. McTigue ultimately confirmed

his and Ms. Henderson's availability.  The parties are continuing to discuss a future mediation

date.

**E.      Lead Counsel Abandons Ms. Henderson's Affiliated Funds Claim, and Ms. Henderson Retains New Counsel.**

Making good on the threat they levied in their May 7 email, on June 8, 2018, Lead Counsel withdrew their class certification motion as to the affiliated funds claims, on the basis that "Lead Counsel determined that it is in the best interests of the putative class" to do so.  Dkt. 448.  Later that day, new counsel—three attorneys from Cohen Milstein Sellers & Toll PLLC, who appear to serve as co-counsel with Mr. McTigue on several unrelated matters—entered their appearance as co-counsel for Ms. Henderson.  Dkts. 449-451.

## III.    ARGUMENT

Federal Civil Rule 23(a)(4) requires that a class action may only be certified if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequate representation is particularly important because of the *res judicata* implications of a class judgment.  If the case is not properly and vigorously conducted, either plaintiffs or defendants or both will suffer the consequences of being bound by the resulting judgment."  *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

**A.      The Irreversible Breakdown Ms. Henderson Has Caused with Lead Counsel Renders Ms. Henderson an Inadequate Representative.**

Here, Ms. Henderson appears to be continuing her long-standing pattern of refusing to cooperate (or even communicate) with Lead Counsel, instead acting only through Mr. McTigue.[2] Lead Counsel, on the other hand, has repeatedly and overtly expressed their desire to dismiss

---

[2] BNY Mellon has previously raised its concern that Ms. Henderson, despite her representation to the Court that she would cooperate with lead counsel, is communicating only with Mr. McTigue.  *See generally* Dkts. 320, 346.

Ms. Henderson and the affiliated investments claim[3] from this action.  The breakdown between these two sides, which has played out in public filings, emails to opposing counsel, and correspondence with a neutral mediator, has been manifest since the early days of this litigation, has unnecessarily delayed this litigation for years, and now appears irreversible.

First, Ms. Henderson does not appear to communicate with Lead Counsel.  Based on the emails from Lead Counsel and Mr. McTigue, Lead Counsel does not have direct access to Ms. Henderson; rather, as BNY Mellon noted in earlier motions, Mr. McTigue is the sole conduit to and from Ms. Henderson.  Lead Counsel also appears to lack authority or permission to speak for Ms. Henderson, be it in scheduling mediation, asserting claims, or advancing an overall strategy.  The communication breakdown has negatively impacted the parties' attempts to resolve this long-running case: months-long delays, wasting of judicial resources, a stymied mediation, and perhaps insurmountable complications in the parties' attempt to negotiate a settlement.  Absent effective communication between Ms. Henderson and Lead Counsel, Mr. McTigue continues to wield greater influence than the Court perhaps intended, and it appears that Ms. Henderson is only receiving information that has been filtered by Mr. McTigue, as her letter to the Court suggested—all of which disqualifies Ms. Henderson as a class representative.  *See, e.g., Kassover v. Comput. Depot, Inc.*, 691 F. Supp. 1205, 1214 (D. Minn. 1987) ("[R]ather than competently controlling the course of the litigation, plaintiff has contented himself to rely entirely upon his attorney's direction."), *aff'd*, 902 F.2d 1571 (8th Cir. 1990).

Second, Lead Counsel and Ms. Henderson have diverged in every major strategic decision over the last several months, including whether to support the terms of the parties'

---

[3] Mr. Hershenson does not bring a claim related to BNY Mellon's investments into affiliated mutual funds.  Accordingly, if Ms. Henderson is not permitted to proceed as a class representative, this claim could only proceed on an individual basis.

settlement, whether to allow intervenors into the action, whether to continue to pursue the affiliated funds claims, and whether to engage in further mediation.  These issues strike at the heart of the case.  While Ms. Henderson need not agree with Lead Counsel about every decision through the life of the lawsuit, it is difficult to imagine questions more fundamental to the prosecution of this case than what claims to assert and whether to settle.  To be adequate, Ms. Henderson must be able to work with Lead Counsel and, where necessary, keep counsel in check.  She has abdicated that duty here.  *See Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Ore. 1991) ("To satisfy Rule 23(a)(4), the named representative of a class must be in a position to check the otherwise unfettered discretion of counsel in prosecuting the suit.") (internal quotation marks omitted); *Greene v. Brown*, 451 F. Supp. 1266, 1276 (E.D. Va. 1978) ("The Rule is not intended to substitute the lawyer for the client and turn an individual's suit for vindication of his personal rights into a lawyer's suit for vindication of the rights of a class."); *see also Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 302 (S.D. Tex. 2000) (failure to take supervisory role over lead counsel among reasons lead plaintiff was inadequate representative).

Third, Ms. Henderson has shifted positions on numerous, significant issues, suggesting that she either is again acting as a mouthpiece for Mr. McTigue or, at best, simply cannot make up her mind as to how to proceed in the action.  For instance, within the span of only four days, Ms. Henderson sent a letter to the Court disputing the fairness of a class settlement, and then signed that same settlement.  Ms. Henderson agreed with Lead Counsel to schedule a June 15 mediation, which was confirmed on the parties' May 8 call with the mediator, and then backed out of that mediation later the same day after Mr. McTigue changed course and claimed he could no longer participate.  At worst, these inconsistencies suggest that Ms. Henderson is acting at the

whims of Mr. McTigue; at best, they have repeatedly slowed this litigation to a crawl, draining resources and preventing the parties from making progress toward a class-wide resolution of this action.  It is not in the best interests of the class to be led by a mercurial representative and her "contumacious"—and already deemed inadequate—counsel.  *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems … may not be an adequate class representative."), *aff'd*, 791 F.3d 722 (7th Cir. 2015); *see also Tardiff v. Knox County*, 247 F.R.D. 225, 229-230 (D. Mass. 2008) ("When a class complaint is filed, the class representative must always act for the best interests of the class, even when individual interests might suggest otherwise.").

Above all else, Ms. Henderson must show that she can protect the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4).  Ms. Henderson's numerous conflicts with Lead Counsel, and total reliance on an attorney whose conduct in this case has been described by the Court as "deeply disturbing" and "contumacious," are not in the interests of the absent class members, who are entitled to competent and vigorous prosecution of this action.  Ms. Henderson is an inadequate class representative and should be stricken as a named Plaintiff or the motion for class certification should be denied based on adequacy.  *See Price v. USAA Cas. Ins. Co.*, No. 2:10-CV-02152, 2012 WL 2847916, at *2 (W.D. Ark. July 11, 2012) (denying plaintiff's motion for class certification because "Plaintiff has not been diligent in pursuing class certification or in otherwise prosecuting this action" and "failed to vigorously and diligently pursue the claims of the class that he proposes to represent.").

**B.      Mr. Hershenson's Interests Are Not Aligned with the Class Because He Is Keeping His Terminated Trust Open Solely to Extract Individual Benefits That Would Not Inure to the Class.**

Mr. Hershenson's trust terminated by its terms years ago.  BNY Mellon attempted to distribute the trust corpus in accordance with its ordinary practice, but Mr. Hershenson blocked

that distribution by filing a class action lawsuit against BNY Mellon and ultimately joining this lawsuit.  Mr. Hershenson's gamesmanship forced BNY Mellon to file an accounting proceeding in Pennsylvania state court, and Mr. Hershenson attempted to delay the accounting, asking that court to defer to this class action so that Mr. Hershenson could remain a class representative.[4] As a result of his maneuvering, Mr. Hershenson has effectively held the trust open (for which his brother and sister are also beneficiaries entitled to distributions) artificially for years in order to benefit himself through a class settlement.

Mr. Hershenson's interests are not aligned with those of the class that he seeks to represent.  Mr. Hershenson's trust is no longer being charged any fees, including the fees he challenges in this action, and any change in BNY Mellon's notice to customers about those fees would not benefit him.  Mr. Hershenson attempted to resolve this case through a settlement involving prospective relief to the class—which has no impact on Mr. Hershenson's trust—and favorable termination terms for Mr. Hershenson's trust that other class members will not receive. This Court recognized that very conflict.  *See* Dkt. 427 at 5-6 ("The other thing is with Mr. [Hershenson] pulling out completely, I don't know if he's a fair and adequate representative, because there's no past benefits that are being received.  It's all prospective.").  By holding open his trust solely to remain in this case, Mr. Hershenson's interests are not the same as the class members he proposes to represent whose trusts are open by their own terms and are subject to fees, now and in the future.

To be an adequate class representative, Mr. Hershenson must show that his "interests are aligned with other class members and [that he] is in a position to vigorously protect the class' interests."  *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).  But unlike

---

[4] While the judge in the accounting proceeding declined that request, the parties ultimately agreed to stay the accounting while the parties discussed settlement of this class action.

the rest of the class (alleged to be at the mercy of BNY Mellon), Mr. Hershenson holds the fate

of his trust in his own hands.  He can have his trust closed at any time, or continue keep it open

for so long as it suits him to stay a class representative.  His position is materially different from

the rest of the class, and he is not in a position to "vigorously" protect the class's interests.  As a

result, he is not an adequate class representative.  *See Andrews,* 780 F.2d at 130.

**C.** **Lead Counsel Cannot Adequately Represent Class Members After Firing the Class Representative and Making Misstatements to BNY Mellon's Counsel.**

Federal Civil Rule 23(a)(4)'s adequacy requirement demands that Plaintiffs' counsel be

"qualified, experienced and able to vigorously conduct the proposed litigation."  *Andrews*, 728

F.2d at 130.  Similarly, Rule 23(g)(4) requires that "[c]lass counsel must fairly and adequately

represent the interests of the class."  Fed. R. Civ. P. 23(g)(4); *see also Jones v. Ford Motor*

*Credit Co.*, No. 00 Civ. 8330, 2005 WL 743213, at *26 (S.D.N.Y. Mar. 31, 2005) (noting that

Rule 23(g) "largely incorporates the adequacy standards developed [under Rule 23(a)(4)], which

means that class counsel decisions premised on Rule 23(a)(4) remain relevant").

Lead Counsel have repeatedly acted in a manner that is inconsistent with their duty to

proposed class representative, Ms. Henderson, and the class she seeks to represent.  For starters,

they attempted to excise Ms. Henderson from the parties' class-wide settlement, presumably

without Ms. Henderson's knowledge or consent, while representing to BNY Mellon's counsel

that they could not "locate" her.  Either situation—that Lead Counsel was essentially firing Ms.

Henderson or could not communicate with her because Mr. McTigue was blocking access to

her—creates an irreversible conflict between Lead Counsel and Ms. Henderson, rendering Lead

Counsel inadequate to protect the interests of Ms. Henderson and the class she seeks to represent.

Further, Lead Counsel never acknowledged that excising Ms. Henderson from the case would be

leaving their affiliated funds class unrepresented and therefore uncertifiable, against the interests of the class.

Next, in the process of moving toward mediation, Lead Counsel represented that if the case did not settle imminently, they would drop Ms. Henderson of their own accord.  *See.* Ex. B. This representation, according to Mr. McTigue, was made without Ms. Henderson's knowledge or consent and, again, meant the abandonment of the affiliated funds claims on behalf of the entire class.  *See* Ex. C.

Finally, Lead Counsel carried out their threat, withdrawing the motion for class certification as to Ms. Henderson's affiliated funds claims.  Dkt. 448.  Notably, this notice makes no representation that it was executed with the knowledge or consent of Ms. Henderson.  *See id.* And of course, Ms. Henderson followed it almost immediately with entries of appearance from a new firm, as Mr. McTigue's co-counsel on her behalf, indicating that she does not consent to the withdrawal.  *See* Dkt. Nos. 449-451.  Currently, Bailey & Glasser and the Howard Law Firm serve as Lead Counsel but no longer appear to represent Ms. Henderson, who is individually represented by Mr. McTigue and Cohen Milstein.  This not only contradicts Ms. Henderson's representations to the Court at the October 13, 2016 status conference, but is an untenable arrangement:  Ms. Henderson is a named Plaintiff in this action but evidently is not represented by Lead Counsel.

In short, Lead Counsel cannot adequately represent class members when they have repeatedly attempted to involuntarily dismiss a class representative—their own client—from the action, and in doing so, have both abandoned the claims of the class members they purportedly represent and made misrepresentations to BNY Mellon's counsel.  *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257-PBS, 2008 WL 53278, at * 1 (D. Mass. Jan. 3,

2008) (considering "any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class" and striking class counsel); *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007 (N.D. Ill. 2017) (finding class counsel inadequate where class counsel acted without authority of class representative).

Because Bailey & Glasser and the Howard Law Firm cannot adequately represent the class, certification should be denied for this additional reason.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons and those set forth in its Opposition and Sur-Reply to Plaintiffs' Motion for Certification, Dkts. 323 and 349, BNY Mellon respectfully requests that this Court deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

*/s/ Nellie E. Hestin*
Mary J. Hackett (admitted *pro hac vice*)
mhackett@mcguirewoods.com
K. Issac deVyver (admitted *pro hac vice*)
kdevyver@ mcguirewoods.com
Melissa M. Taylor (admitted *pro hac vice*)
mmtaylor@ mcguirewoods.com
Nellie E. Hestin (BBO #676886)
nhestin@mcguirewoods.com
**MCGUIREWOODS LLP**
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050
*Attorneys for Defendant BNY Mellon, N.A.*

Dated:  June 22, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2018.

*/s/ Nellie E. Hestin*